# Composite Exhibit C



# Notice of Service of Process

**MC4 / ALL**
**Transmittal Number: 25152509**
**Date Processed: 07/01/2022**

| | |
|---|---|
| **Primary Contact:** | Ms. Mona Cohen<br>Assurant<br>11222 Quail Roost Dr<br>Miami, FL 33157-6596 |

| | |
|---|---|
| **Entity:** | American Security Insurance Company<br>Entity ID Number  1874436 |
| **Entity Served:** | American Security Insurance Company |
| **Title of Action:** | Delmar Scott Meyer vs. American Security Insurance Company |
| **Matter Name/ID:** | Delmar Scott Meyer vs. American Security Insurance Company (12511902) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Santa Rosa County Circuit Court, FL |
| **Case/Reference No:** | 22-CA-385 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 07/01/2022 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | Chief Financial Officer on 06/29/2022 |
| **How Served:** | Electronic SOP |
| **Sender Information:** | Insurance Litigation Group, P.A<br>786-529-0090 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



*22-000218211*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

DELMAR SCOTT MEYER

**CASE #:** 22000385CAMXAX
**COURT:** CIRCUIT COURT
**COUNTY:** SANTA ROSA
**DFS-SOP #:** 22-000218211

PLAINTIFF(S)

VS.

AMERICAN SECURITY INSURANCE COMPANY

DEFENDANT(S)
_____/

SUMMONS, COMPLAINT, DISCOVERY, X1-27428-NOTICE OF DESIGNATION OF EMAIL.PDF.PDF

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Wednesday, June 29, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Friday, July 1, 2022 to the designated agent for the named entity as shown below.

AMERICAN SECURITY INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

FAITH EVERETT
INSURANCE LITIGATION GROUP
17021 NE 6TH AVE L-R
NORTH MIAMI BEACH, FL 33162

GC1

IN THE CIRCUIT COURT OF THE 1ST JUDICIAL CIRCUIT, IN AND FOR
SANTA ROSA COUNTY, FLORIDA

GENERAL   JURISDICTION   DIVISION
CASE NO.:   **22-CA-385**

DELMAR SCOTT MEYER,

    *Plaintiff*,

vs.

AMERICAN SECURITY INSURANCE COMPANY,

    *Defendant*,

_____/

## S U M M O N S

THE STATE OF FLORIDA:
To Each Sheriff of the State:

    YOU ARE HEREBY COMMANDED to serve this summons and a copy of the
Complaint filed in this action on Defendant,

AMERICAN SECURITY INSURANCE COMPANY
C/O FLORIDA CHIEF FINANCIAL OFFICER, AS REGISTERED AGENT
200 EAST GAINES STREET, TALLAHASSEE, FL 32399

    Each Defendant is required to serve written defenses to the complaint or petition on
LEVI GLICK, Esq. **of Insurance Litigation Group, P.A.,** Plaintiff's attorney, whose address is **1500
NE 162nd St, North Miami Beach, Florida 33162,** within 20 days after service of this summons on
that defendant, exclusive of the day of service, and to file the original of the defenses with the **Clerk
of this Court,** either before service on Plaintiff's attorney or immediately thereafter. If a defendant
fails to do so, a default will be entered against the defendant for the relief demanded in the complaint
or petition.

DATED: **JUNE 17 2022**
    _____.

    WITNESS my hand and the Seal of said Court

             DONALD C. SPENCER
             As Clerk of the Court

      By_____         *Tammy Jo Brown*
        As Deputy Clerk          Signed by Tammy Brown
                          on 06/17/2022 08:54:49 lO6ean0A

ILG File #: 27428
Claim #: 00102857003
Case #:



1500 N.E. 162nd Street
Miami, Florida, 33162
info@ILGPA.com
www.ILGPA.com

O. 786.529.0090
f. 866.239.9520

June 24, 2022

**Via Service of Complaint**

Re:     Delmar Scott Meyer v. American Security Insurance Company
        SANTA ROSA County Court Case No. 22-CA-385
        Date of Loss: September 16, 2020

### REQUEST FOR DEPOSITION DATES

To Whom It May Concern:

    This letter serves as our formal request for your office to provide us with deposition dates, to occur **30 days** after the Notice of Service, so that we can **depose the Corporate Representative, the Field Adjuster, the Claims Examiner, the Desk Adjuster and/or the individual with the most knowledge of the subject claim.**

    Please also provide his or her address, so that we may include that information in the deposition notice(s). Please send their available dates for deposition to our scheduling department at: annie@ilgpa.com.

    Lastly, please let us know whether you will be producing the above parties referred, or if we will need to serve a subpoena. In that event, please also send us their last known contact information.

Thank you for your timely attention to this matter.

Very truly yours,

Insurance Litigation Group, P.A

IN THE CIRCUIT COURT OF THE 1ST JUDICIAL CIRCUIT, IN AND FOR
SANTA ROSA COUNTY, FLORIDA

GENERAL   JURISDICTION   DIVISION
CASE NO.:

DELMAR SCOTT MEYER,

　　　*Plaintiff*,

vs.

AMERICAN　　　SECURITY　　　INSURANCE
COMPANY,

　　　*Defendant*,

_____/

## COMPLAINT

Plaintiff, DELMAR SCOTT MEYER, by and through undersigned counsel sues the

Defendant, AMERICAN SECURITY INSURANCE COMPANY, and alleges:

### JURISDICTIONAL ALLEGATIONS

1.　　　This is an action for damages for greater than $30,000.00, exclusive of interest,

costs, and attorney's fees.

2.　　　At all times material hereto, Plaintiff was and is a resident of SANTA ROSA

County, Florida, and is otherwise sui juris.

3.　　　At all material times hereto, Plaintiff owned the property insured by Defendant

located at 4281 Pace Lane, Pace, FL 32571 (the "Property").

4.　　　The policy of insurance sued upon was issued by Defendant to Plaintiff in SANTA

ROSA County, Florida.

5.　　　Jurisdiction and venue are proper in SANTA ROSA County, Florida.

## GENERAL ALLEGATIONS

6.      In consideration for the premiums paid to it, prior to September 16, 2020, Defendant issued an insurance policy number, MLR08678665116, to Plaintiff for Plaintiff's property located at 4281 Pace Lane, Pace, FL 32571 in SANTA ROSA County, Florida (the "Policy").   A copy of the Policy is attached hereto and incorporated herein as *Exhibit "A."*

7.      The Policy issued by Defendant included coverage for dwelling, other structures, personal property, and loss of use suffered by Plaintiff.

8.      At all times material hereto, including on September 16, 2020, the date of loss, the Policy was in full force and effect.

9.       Defendant's policy for the building and other structures portions of the Policy is an "all risk" policy that covers all direct physical losses to the Property that are not otherwise expressly excluded.

10.     All conditions precedent to obtaining payment of insurance benefits under the Policy have been complied with, met, or waived.

11.     At all times material hereto, Defendant was not immune from liability for breach of contract pertaining to insurance coverage.

## COUNT I – BREACH OF CONTRACT

12.     Plaintiff adopts and realleges the allegations contained in paragraphs 1 through 11 above.

13.     This is a cause of action for breach of contract arising out of an insurance Policy that was in effect at the time of the loss to the insured Property.

14.     On or about September 16, 2020, Plaintiff's property was damaged by Hurricane Sally, a covered loss (the "Loss").

15.     The September 16, 2020 Loss caused Plaintiff to suffer economic damage to their property, including physical loss to dwelling, contents, and loss of use, and Plaintiff to suffer such damages.  *See Estimate of Damage, attached as Exhibit "B."*

16.     Plaintiff gave timely notice of the Loss and resulting damage to Defendant and/or its authorized agents, employees, or representatives.

17.     Defendant responded to the Loss by assigning claim number 00102857003 (the "Claim").

18.     Defendant was afforded the opportunity to fully inspect the Loss, investigate the cause of the Loss, and quantify the amount of the Loss.

19.     Defendant did inspect the Loss and Property in its investigation of the Claim.

20.     Defendant afforded coverage for the Claim.

21.     Defendant determined that $3,274.67 was owed in policy benefits on the Claim (the "Partial Payment").

22.     Defendant's Partial Payment of the Loss is an admission that the September 16, 2020 Loss is a covered loss under the Policy.

23.     Through its determination that there were damages on the Claim, Defendant admitted liability for the Loss.

24.     The amount of damages determined by Defendant is inadequate to perform the repairs needed to fix all damages caused by the Loss and to restore Plaintiff's Property to its pre-Loss condition.

25.     Defendant breached the Policy by failing to pay the full amount of damages sustained by Plaintiff.

26.    Defendant continues to refuse to pay the full amount of Plaintiff's covered Loss, despite Plaintiff's demands for full payment.

27.    Plaintiff has been damaged as a result of Defendant's breach in the form of insurance benefits due and owing, plus interest, costs, and attorney's fees.

28.    Plaintiff has retained the undersigned counsel to prosecute this action and is obligated to pay the undersigned counsel a reasonable attorney's fee.

29.    Plaintiff is entitled to recover reasonable attorney's fees from Defendant pursuant to Fla. Stat. Section 627.428, or in the alternative Fla. Stat. Section 626.9373, or any other applicable attorney's fees statute.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages together with interest, costs, and attorney's fees, and for such further relief this court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff herein demands a trial by jury of all issues so triable.

## CERTIFICATE

THIS COMPLAINT IS DATED AND SIGNED June  8, 2022 and was filed by:

INSURANCE LITIGATION GROUP, P.A.
*Attorney for Plaintiff*
1500 N.E. 162nd Street
Miami, Florida 33162
Telephone:    (786) 529-0090
Facsimile:    (866) 239-9520
E-Mail: service@ILGPA.COM

By:    /s/ Milton B Grey
       MILTON B GREY, ESQ.
       FL Bar No. 0116560
       LEVI GLICK, ESQ.
       FL Bar No. 1010718

# EXHIBIT "A"

QUICKEN LOANS INC
INSURANCE SERVICE CENTER
P.O. BOX 202070
FLORENCE, SC  29502

DELMAR SCOTT MEYER
5761 N ROP RD
MILTON, FL  32570

Re:  3371503634



1400



P.O. BOX 202070 | FLORENCE, SC  29502

Notice Date:  May 29, 2020

DELMAR SCOTT MEYER
5761 N ROP RD
MILTON, FL  32570

RE:  Mortgage loan number: 3371503634
Subject: RENEWAL OF LENDER-PLACED INSURANCE POLICY NUMBER:  MLR08678665116
**Property address:  4281 PACE LN, MILTON, FL  32571**

Dear DELMAR SCOTT MEYER:

Enclosed is a renewal of your lender placed hazard insurance policy, we obtained on your behalf. **Your loan agreement requires you to maintain a hazard insurance policy covering your home that is in effect at all times. As you still have not provided us with proof of acceptable coverage, we have again bought insurance on your property. The enclosed renewal policy's annual premium of $2,345.00 has been billed to an impound/escrow account that may have been established for your loan. The policy will have a deductible (the amount of loss you would have to pay per policy claim) in the amount shown on the policy. Please read the policy carefully to make sure you understand its terms and conditions.**

**We strongly recommend that you obtain your own insurance coverage. The renewal insurance policy we bought will remain in effect until you provide us with evidence of acceptable coverage, at which time the policy we obtained will be cancelled and you will receive a refund of any unearned premium, as calculated by the insurance company. Please note that you may cancel this coverage at any time by providing us with evidence of other acceptable coverage; however, if the effective date of your acceptable coverage is after the effective date of the enclosed renewal policy, you will be charged for the number of days that coverage was provided under the renewal policy.**

**Please read the important information and instructions contained in this letter:**

**The cost of the hazard insurance we obtained is likely much higher than insurance you can obtain on your own.** The higher cost is because the insurance we buy is issued automatically without evaluating the risk of insuring your property. When comparing premiums, remember that our policy provides very limited coverage as indicated below.

**The hazard insurance we obtained may provide benefits to you, but is primarily for the benefit of the person or company who presently owns your mortgage loan.** If you incur property damage or loss, you may not have adequate coverage for any damages that you suffer because the person or company that owns your loan will be paid first.

**The hazard insurance we obtained only covers the structure of your home (for example, the building, walls, floors, roof and permanent attachments).**

- It does **not** cover your furniture or any of your other personal belongings.
- It does **not** cover the cost of temporarily living outside of your home because it was damaged and is being repaired.
- It does **not** cover any liability incurred personally to someone who is injured while on your property.

**Questions?** Contact Your Quicken Loans Team.

**Phone:** 1-855-282-8722     **Hours:** Monday – Friday: 8:30 a.m. – 9:00 p.m. ET
**Secure Fax:** 1-855-703-9194                        Saturday: 9:00 a.m. – 4:00 p.m. ET

867H4-1019


**Quicken Loans®**
Engineered to **Amaze**™

**The hazard insurance we obtained does not cover any amounts you feel your home is worth in excess of the last amount of dwelling coverage that you obtained and we entered on our records. If we did not know the last amount of insurance coverage you had, we purchased coverage in the amount of the unpaid principal balance of your loan on the date we requested the insurance coverage to begin.** Although such coverage does not meet our property insurance requirements, we purchased it in the absence of information that would allow for acceptable coverage for your property. If you believe that the amount of coverage shown in the enclosed policy does not accurately represent the value of the home, please call your Quicken Loans team at 1-855-282-8722.

**The hazard insurance we purchase will be effective beginning on the date that your previous acceptable insurance expired or was cancelled (regardless of whether or not your policy provided insurance coverage to the owner of your mortgage loan after that date).** Insurance that protects only the owner of your loan after your policy expiration or cancellation date is limited insurance that is not acceptable insurance coverage to us, and will be superseded by the acceptable hazard insurance policy we purchase.

**IMPORTANT BANKRUPTCY INFORMATION:**

**If you have an active bankruptcy or you received a bankruptcy discharge, we are sending this for informational or legal purposes only. We're not trying to collect against you personally. If you have any questions about this communication or your obligation to pay, please contact your attorney.**

**We urge you to contact an agent of your choice to obtain insurance at a more competitive price.** If you have already ordered other insurance acceptable to us, please instruct your agent or insurance carrier to forward evidence of coverage with a Lenders Loss Payable endorsement in favor of:

> QUICKEN LOANS INC
> ISAOA
> P.O. BOX 202070
> FLORENCE, SC  29502
> Loan Number: 3371503634
> **Or Fax To: 1-855-703-9194**

You may also upload your insurance information by visiting our website at www.mycoverageinfo.com/quickenloans. Upon receipt of evidence of acceptable continuing or renewed insurance coverage, we will cancel the policy we obtained. For any period of time during which your policy was not in effect, you will be charged for the lapse in coverage.

Please be advised that the lender-placed carrier providing the coverage referenced above may be staffing our customer service telephone lines.

We hope you'll agree that obtaining your own insurance is in your best interest. If you have any questions or concerns, don't forget that we're here to help! You can contact us at 1-855-282-8722, Monday – Friday, 8:30 a.m. – 9:00 p.m. ET, and Saturday, 9:00 a.m. – 4:00 p.m. ET.

Sincerely,

Your Quicken Loans Team

This communication is from a debt collector and is an attempt to collect a debt.

**Questions?** Contact Your Quicken Loans Team.

**Phone:** 1-855-282-8722
**Secure Fax:** 1-855-703-9194

**Hours:** Monday – Friday: 8:30 a.m. – 9:00 p.m. ET
Saturday: 9:00 a.m. – 4:00 p.m. ET

867H4-1019

# DECLARATIONS

## AMERICAN SECURITY INSURANCE COMPANY
PO BOX 50355, ATLANTA, GA 30302

A Stock Insurance Company

**CERTIFICATE NUMBER: MLR08678665116**

| CERTIFICATE PERIOD: | | | Issued under the provisions of Master Policy No.: |
|---|---|---|---|
| EFFECTIVE DATE 05/21/2020 | EFFECTIVE TIME 12:01 am | EXPIRATION DATE 05/21/2021 | MIP-RCH-00867-00 |

**NAMED INSURED** and Mailing Address:

QUICKEN LOANS INC
ISAOA
P.O. BOX 202070
FLORENCE, SC  29502

*For Company Use:*
*Basis:*
*Territory:* 0011
*Class:*
*Other:* FIR SFD  008670000

**DESCRIBED LOCATION.** The property covered by this Certificate is at the described location unless otherwise stated:

4281 PACE LN
MILTON, FL  32571

**COVERAGE AND LIMITS OF LIABILITY** – Coverage is provided only where a premium is shown for the coverage, subject to all conditions of this Certificate.

**RESIDENTIAL PROPERTY:**

| LIMIT OF LIABILITY | DEDUCTIBLES | PREMIUM |
|---|---|---|
| Coverage A - $161,828 | Windstorm, Hail or Hurricane: 2% of the Limit of Liability or $2,000, whichever is greater. | $2,345.00 |
| Coverage B - 10% of Coverage A | All Other Perils: $2,000 | |
| | TOTAL PREMIUM | $2,345.00 |

**COMMERCIAL PROPERTY:**

| LIMIT OF LIABILITY | DEDUCTIBLES | PREMIUM |
|---|---|---|
| Building - | Windstorm, Hail or Hurricane:           % of the Limit of Liability or , whichever is greater. | |
| | All Other Perils: | |
| | TOTAL PREMIUM | |

Optional Coverages, Assessments, Surcharges, Taxes, Fees (if applicable):

| | | |
|---|---|---|
| | TOTAL AMOUNT | $2,345.00 |

**FORMS AND ENDORSEMENTS** which are made a part of this Certificate at the time of issuance:

MIP 223 AS (01-12),MIP 233 (01-12),MIP 05 FL (01-12),MIP 243 FL (11-19)
MIP 304 FL (02-13),NOTI1256 (03-14),MIP 219 (01-12),MIP 239 FL (02-13)

**BORROWER** - Name and address:

DELMAR SCOTT MEYER
5761 N ROP RD
MILTON, FL  32570

Loan No.: 3371503634

CLAIMS: 1-800-652-1262

Issue Date: 05/29/2020

ALL OTHER INQUIRIES:
1-855-282-8722

Countersignature (where required)

# AMERICAN SECURITY INSURANCE COMPANY

P.O. BOX 50355, ATLANTA, GA 30302
A Stock Insurance Company
Home Office: Wilmington, DE

## Residential Dwelling Certificate

**This Certificate only covers buildings and structures.  Please read your Certificate and all endorsements carefully.**

THIS CERTIFICATE JACKET TOGETHER WITH THE DWELLING FORM AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS CERTIFICATE.

## QUICK REFERENCE

| | Beginning On Page | | | Beginning On Page |
|---|---|---|---|---|
| AGREEMENT | 1 | | CONDITIONS | |
| DEFINITIONS | 1 | | Certificate Period | 5 |
| COVERAGES | 1 | | Insurable Interests | 5 |
| OTHER COVERAGES | 1 | | Concealment or Fraud | 5 |
| Other Structures | 1 | | Your Duties After Loss | 5 |
| Debris Removal | 2 | | Loss Settlement | 6 |
| Reasonable Repairs | 2 | | Loss to a Pair or Set | 6 |
| Property Removed | 2 | | Glass Replacement | 6 |
| Collapse | 2 | | Appraisal | 6 |
| Glass or Safety Glazing Material | 2 | | Other Insurance | 6 |
| Ordinance or Law | 3 | | Subrogation | 6 |
| PERILS INSURED AGAINST | 3 | | Action Against Us | 7 |
| GENERAL EXCLUSIONS | 4 | | Loss Payment | 7 |
| Ordinance or Law | 4 | | Deductible | 7 |
| Earth Movement | 4 | | Abandonment of Property | 7 |
| Water Damage | 4 | | No Benefit to Bailee | 7 |
| Power Failure | 5 | | Cancellation | 7 |
| Neglect | 5 | | Non-Renewal | 7 |
| War | 5 | | Liberalization Clause | 7 |
| Nuclear Hazard | 5 | | Waiver or Change of Certificate Provisions | 8 |
| Intentional Loss | 5 | | Assignment | 8 |
| Weather conditions | 5 | | Nuclear Hazard Clause | 8 |
| Acts or decisions | 5 | | Salvage and Recoveries | 8 |
| Faulty, inadequate or defective | 5 | | Volcanic Eruption Period | 8 |
| | | | Premiums | 8 |

## READ YOUR CERTIFICATE CAREFULLY

# "THIS CERTIFICATE CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."

MIP 223 AS (01-12)

MIP223ASFL-0914

## AGREEMENT

**We** will provide the insurance described in this Certificate in return for the premium and compliance with all applicable provisions of this Certificate and the Declarations, which is attached to and forms a part of this Certificate.

## DEFINITIONS

In this Certificate, **you** and **your** refer to the financial institution shown as **named insured** in the Declarations. **We, us** and **our** refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **Borrower** refers to the person or persons who have entered into a lien or mortgage agreement with the **named insured** for the property shown as the **described location** in the Declarations.
2. **Residential Property** means the **dwelling** and other structures covered by this Certificate and shown as the **described location** in the Declarations.
3. **Net Loan Balance** means and is limited to only the unpaid principal balance plus earned interest as of the date of loss.
4. **Actual Cash Value** means the cost of replacing the damaged or destroyed property with a comparable new property, minus depreciation and obsolescence.
5. **Described Location.** The legal description, or common street address, of real property which has been pledged under a valid deed of trust, mortgage document, or any other mortgage instrument as security for a loan made, assumed or serviced by an insured and upon which a building is situated.
6. **Dwelling.** A building designed for use as a residence for no more than four families or a **mobile home.**
7. **Mobile Home** means:
   a. A building which satisfies the National Mobile Homes Construction and Safety Standards, as presently existing or hereafter amended, or the American Society of Civil Engineers Standard ANSI/ASCE 7-88.
   b. A manufactured home is a structure built on a permanent chassis, transported to its site in one or more sections and affixed to a permanent foundation.

## COVERAGES

This insurance applies to the **described location,** coverages for which a Limit of Liability is shown and Perils Insured Against for which a premium is stated.

## COVERAGE A – Dwelling

1. **Property Covered**
   **We** cover
   a. The 1-4 family **dwelling** on the **described location** shown in the Declarations, used principally for **dwelling** purposes, including structures attached to the **dwelling;**
   b. Materials and supplies located on or next to the **described location** used to construct, alter or repair the **dwelling** or other structures on the **described location;** and
   c. If not otherwise covered in this Certificate, building equipment and outdoor equipment used for the service of and located on the **described location.**
2. **Property Not Covered**
   a. Personal property of any kind.
   b. Outdoor trees, shrubs, plants and lawns.
   c. Outdoor swimming pools; fences, piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls not constituting a part of buildings; walks, roadway; and other paved surfaces.
   d. Cost of excavations, grading or filling.
   e. Foundations of buildings, machinery, boilers or engines which foundations are below the surface of the ground.
   f. Pilings, piers, pipes, flues and drains which are underground.
   g. Pilings which are below the low water mark.
   h. Land, including land on which the **residential property** is located.

## COVERAGE B – Other Structures

**We** cover other structures on the **described location,** set apart from the **dwelling** by clear space. This includes structures connected to the **dwelling** by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

**We** do not cover other structures used in whole or in part for commercial, manufacturing or farming purposes.

## OTHER COVERAGES

1. **Other Structures. You** may use up to 10% of the Coverage A Limit of Liability for loss by a Peril Insured Against to other structures described in Coverage B.

Includes copyrighted material of Insurance Services Office with its permission

Use of this coverage does not reduce the Coverage A Limit of Liability for the same loss.

2. **Debris Removal. We** will pay up to 10% of the Coverage A Limit of Liability for your reasonable expense for the removal of:

   **a.** Debris of covered property if a Peril Insured Against causes the loss; or

   **b.** Ash, dust or particles from a volcanic eruption that has caused direct loss to a **dwelling.**

   Use of this coverage does not reduce the Coverage A Limit of Liability for the same loss.

3. **Reasonable Repairs.**

   **a.** In the event that covered property is damaged by a Peril Insured Against, **we** will pay the reasonable cost incurred by **you** for necessary measures taken solely to protect against further damage.

   **b.** If the measures taken involve repair to other damaged property, **we** will pay for those measures only if that property is covered under this Certificate and the damage to that property is caused by a Peril Insured Against. This coverage does not:

      **(1)** Increase the Coverage A Limit of Liability that applies to the covered property;

      **(2)** Relieve **you** of **your** duties, in case of a loss to covered property, as set forth in Condition 4.b.

4. **Property Removed.**

   **We** insure covered property against direct loss from any cause while being removed from a **described location** endangered by a Peril Insured Against and for no more than 30 days while removed.

   This coverage does not change the Limit of Liability that applies to the property being removed.

5. **Collapse.**

   **a.** With respect to this Other Coverage:

      **(1)** Collapse means an abrupt falling down or caving in of a **residential property** or any part of a **residential property** with the result that the **residential property** or part of the **residential property** cannot be occupied for its current intended purpose.

      **(2)** A **residential property** or any part of a **residential property** that is in danger of falling down or caving in is not considered to be in a state of collapse.

      **(3)** A part of a **residential property** that is standing is not considered to be in a state of collapse even if it has separated from another part of the **residential property.**

      **(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of

cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

   **b.** **We** insure for risk of direct physical loss to covered property involving collapse of a **residential property** or any part of a **residential property** caused only by one or more of the following:

      **(1)** Perils Insured Against. These perils apply to covered **residential property** for loss insured by this Other Coverage;

         **(a)** Fire or Lightning
         **(b)** Windstorm or Hail
         **(c)** Explosion
         **(d)** Riot or Civil Commotion
         **(e)** Aircraft
         **(f)** Vehicles
         **(g)** Smoke
         **(h)** Vandalism or Malicious Mischief
         **(i)** Damage by Burglars
         **(j)** Falling Objects
         **(k)** Weight of Ice, Snow or Sleet
         **(l)** Accidental Discharge or Overflow of Water or Steam
         **(m)** Sudden and Accidental Tearing Apart, Cracking, Burning or Bulging
         **(n)** Freezing
         **(o)** Sudden and Accidental Damage From Artificially Generated Electrical Current
         **(p)** Volcanic Eruption

      **(2)** Hidden decay;

      **(3)** Hidden insect or vermin damage;

      **(4)** Weight of contents, equipment, animals or people;

      **(5)** Weight of rain which collects on a roof;

      **(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   **c.** Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **b.(2)** through **(6)** above unless the loss is a direct result of the collapse of a **residential property** or any part of a **residential property.**

   **d.** This coverage does not increase the Coverage A Limit of Liability that applies to the damaged covered property.

6. **Glass or Safety Glazing Material.**

   **a.** **We** cover:

      **(1)** The breakage of glass or safety glazing material which is part of a covered **residential property,** storm door or storm window;

Includes copyrighted material of Insurance Services Office with its permission

(2) The breakage of glass or safety glazing material which is part of a covered **residential property,** storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a **residential property,** storm door or storm window.

**b.** This coverage does not include loss to covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above.

**c.** This coverage does not increase the Coverage A Limit of Liability that applies to the damaged property.

**7. Ordinance Or Law.**

**a.** The Ordinance Or Law Limit of Liability determined in **b.** below will apply with respect to the increased costs due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered **residential property** damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered **residential property,** when that **residential property** must be totally demolished because of damage by a Peril Insured Against to another part of that covered **residential property;** or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered **residential property** necessary to complete the remodeling, repair or replacement of that part of the covered **residential property** damaged by a Peril Insured Against.

**b.** If **you** are an owner of a **described location**, and that location is insured for Coverage A, **you** may use up to 10% of the Limit of Liability that applies to Coverage A at each **described location.** This limit includes any resulting debris removal expense.

**c. We** do not cover:

(1) The loss in value to any covered **residential property** due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires **you** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way

respond to, or assess the effects of, **pollutants** in or on any covered **residential property.**

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

## PERILS INSURED AGAINST

**COVERAGE A – DWELLING and
COVERAGE B - OTHER STRUCTURES**

**We** insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, **we** do not insure loss:

**1.** Excluded under **General Exclusions;**

**2.** Involving collapse, other than as provided in **Other Coverages 5;**

**3.** Caused by:

**a.** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a

(1) Fence, pavement, patio or swimming pool;

(2) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building or other structure;

(3) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(4) Pier, wharf or dock.

**b.** Theft of property not part of a covered **residential property** or structure;

**c.** Theft in or to a **dwelling** or structure under construction;

**d.** Wind, hail, ice, snow or sleet to:

(1) Outdoor radio and television antennas and aerials including their lead-in wiring, masts or towers; or

(2) Trees, shrubs, plants or lawns;

**e.** Constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

Includes copyrighted material of Insurance Services Office with its permission

**f.** Any of the following:
   **(1)** Wear and tear, marring, deterioration;
   **(2)** Inherent vice, latent defect, mechanical breakdown;
   **(3)** Smog, rust or other corrosion, fungi, mold, wet or dry rot.
   **Fungi** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi;
   **(4)** Smoke from agricultural smudging or industrial operations;
   **(5)** Discharge, dispersal, seepage, migration release or escape of **pollutants.**
   **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
   **(6)** Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings; or
   **(7)** Birds, vermin, rodents, insects or domestic animals.

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, **we** cover loss caused by the water including the cost of tearing out and replacing any part of a **residential property** necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which this water escaped.

For the purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or roof drain, gutter, downspout or similar fixtures or equipment.

**General Exclusion 1.c. Water Damage,** Paragraphs **(1)** and **(3)** that apply to surface water and water below the surface of ground do not apply to loss by water covered under **3.f.** above.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this Certificate is covered.

# GENERAL EXCLUSIONS

**1.** **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event

contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**a.** **Ordinance or Law.**
   Ordinance or Law means any ordinance or law:
   **(1)** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion **1.a.(1)** does not apply to the Limit of Liability that may be provided under **Other Coverage 7. Ordinance or Law:**
   **(2)** The requirements of which result in a loss in value to property; or
   **(3)** Requiring **you** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants.**
   **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion **1.a.** applies whether or not the property has been physically damaged.

**b.** **Earth Movement.**
   Earth Movement means:
   **(1)** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;
   **(2)** Landslide, mudslide or mudflow;
   **(3)** Subsidence or sinkhole; or
   **(4)** Any other earth movement including earth sinking, rising or shifting;
   caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

**c.** **Water Damage,** meaning:
   **(1)** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
   **(2)** Water or water-borne material which backs up through sewers or drains  or which overflows from a sump, sump pump or related equipment; or
   **(3)** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a **residential property,** sidewalk,

Includes copyrighted material of Insurance Services Office with its permission

driveway, foundation, swimming pool or other structure;

Caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire or explosion resulting from water damage is covered.

**d.** **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **described location.** But, if a Peril Insured Against ensues on the **described location,** we will pay only for that ensuing loss.

**e.** **Neglect,** meaning **your** neglect to use all reasonable means to save and preserve property at and after the time of a loss.

**f.** **War,** including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**g.** **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of the Conditions.

**h.** **Intentional Loss,** meaning any loss arising out of any act committed:

    **(1)** By **you** or at **your** direction; and

    **(2)** With the intent to cause a loss.

**2.** **We** do not insure for loss to property described in Coverages A and B caused by any of the following However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this Certificate is covered.

**a.** **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

**b.** **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

**c.** **Faulty, inadequate or defective;**

    **(1)** Planning, zoning, development, surveying, siting;

    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** Materials used in repair, construction, renovation or remodeling; or

    **(4)** Maintenance;

of part or all of any property whether on or off the **described location.**

## CONDITIONS

**1.** **Certificate Period.** This Certificate applies only to loss which occurs during the Certificate period.

**2.** **Insurable Interest.** Even if more than one person has an insurable interest in the property covered, **we** will not be liable in any one loss:

**a.** For an amount greater than the interest of a person insured under this Certificate; or

**b.** For more than the applicable Limit of Liability as shown in the Declarations.

If the **described location** is vacant and the mortgage on the property has been declared in default by the mortgagee at the time of a loss, **we** shall pay no more than the **named insured's** interest in the property at the time of loss unless the **borrower** participates in the claim.

The **named insured's** interest is represented by the **borrower's net loan balance.**

**3.** **Concealment or Fraud. We** provide coverage to no persons insured under this Certificate if, whether before or after a loss, one or more persons insured under this Certificate have:

**a.** Intentionally concealed or misrepresented any material fact or circumstance

**b.** Engaged in fraudulent conduct; or

**c.** Made false statements;

relating to this insurance.

**4.** **Your Duties After Loss.** In case of a loss to covered property, **you** must see that the following are done:

**a.** Give prompt notice to **us** or **our** agent;

**b.** **(1)** Protect the property from further damage;

    **(2)** Make reasonable and necessary repairs to protect the property; and

    **(3)** Keep an accurate record of repair expenses;

**c.** Cooperate with **us** or **our** representative in the investigation of a claim;

**d.** As often as **we** reasonably require:

    **(1)** Show the damaged property;

    **(2)** Provide **us** with records and documents **we** request and permit **us** to make copies; and

    **(3)** Submit to examination under oath, while not in the presence of any other **named insured,** and sign the same;

**e.** Send to **us,** within 60 days after **our** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

    **(1)** The time and cause of loss;

    **(2)** **Your** interest and that of all others in the property involved and all liens on the property;

    **(3)** Other insurance which may cover the loss;

    **(4)** Changes in title or occupancy of the property during the term of the Certificate;

    **(5)** Specifications of damaged **residential property** and detailed repair estimates.

Includes copyrighted material of Insurance Services Office with its permission

**5. Loss Settlement.**
In this Condition **5.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law except to the extent that coverage for these increased costs is provided in **Other Coverage 7. Ordinance Or Law.** Covered property losses are settled as follows:

**a.** Property of the following types:

(1) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(2) Structures that are not buildings;

at **actual cash value** at the time of loss but not more than the amount required to repair or replace.

**b.** Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

**We** will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

(1) The Limit of Liability under this Certificate that applies to the **residential property;**

(2) The replacement cost of that part of the **residential property** damaged with material of like kind and quality and for like use;

(3) The necessary amount actually spent to repair or replace the damaged **residential property;** or

(4) The **net loan balance** at the time of loss.

If the **residential property** is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the **residential property** had been built at the original premises.

**c.** **We** will pay no more than the **actual cash value** of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, **we** will settle the loss as noted in **b.** above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the Limit of Liability in this Certificate on the **residential property;** and

(2) Less than $2,500;

**we** will settle the loss as noted in **b.** above whether or not actual repair or replacement is complete.

**d.** **You** may disregard the replacement cost loss settlement provisions and make claim under this Certificate for loss to **residential property**

on **actual cash value** basis. **You** may then make claim for any additional liability according to the provisions of this **Condition 5.** Loss Settlement, provided **you** notify **us** of **your** intent to do so within 180 days after the date of loss.

**6. Loss To A Pair Or Set.**
In case of loss to a pair of set **we** may elect to:

**a.** Repair or replace any part to restore the pair or set to its value before the loss; or

**b.** Pay the difference between **actual cash value** of the property before and after the loss.

**7. Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

**8. Appraisal.** If **you** and **we** fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, **you** or **we** may request that the choice be made by a judge of a court of record in the state where the **described location** is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to **us,** the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**a.** Pay its own appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

**9. Other Insurance.** If **we** have issued a Certificate of insurance because **you** have not received evidence of other acceptable insurance from the **borrower** and **you** subsequently receive such evidence, **you** shall immediately notify **us** and request coverage to be terminated on the **described location.** Coverage on any **described location** provided under this Certificate will be terminated on the effective date of other acceptable insurance.

If there is any other valid or collectible insurance which would attach if the insurance under this Certificate had not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted.

**10. Subrogation** (Our Rights of Recovery). In the event of any claim under this Certificate, **we** are entitled to all **your** rights of recovery against another person. **You** must sign and deliver to **us** any legal

Includes copyrighted material of Insurance Services Office with its permission

papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights and do nothing after loss to prejudice **our** rights.

When **you** have made a claim under this Certificate and also recover from another person, the amount recovered from the other person shall be held by **you** in trust for **us** and reimbursed to **us** to the extent of any damages paid by **us** under this Certificate.

11. **Action Against Us.** No action can be brought unless the Certificate provisions have been complied with and the action is started within one year after the date of loss.

12. **Loss Payment. We** will adjust all losses with the **named insured.** Loss will be made payable to the **named insured.** No coverage will be available to any mortgagee other than that shown as the **named insured** on the Declarations. Loss will be payable 30 days after **we** receive proof of loss and:
    **a.** Reach an agreement with the **named insured;**
    **b.** There is an entry of a final judgment; or
    **c.** There is a filing of an appraisal award with **us.**

13. **Deductible. We** will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the deductible shown on the Declarations. **We** will then pay the amount of loss or damage in excess of the deductible, up to the applicable Loss Settlement limit.

14. **Abandonment of Property. We** need not accept any property abandoned by **you.**

15. **No Benefit to Bailee. We** will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this Certificate.

16. **Cancellation.**
    **a.** The **named insured** may cancel this Certificate at any time by returning it to **us** or by letting **us** know in writing of the date cancellation is to take effect.

    No cancellation may be effected more than thirty (30) days before the date such request is received by **us;** unless
    **(1)** There was other valid and collectible insurance coverage for the covered property, or
    **(2)** The **named insured** has obtained **our** prior approval.

    **b. We** may cancel this Certificate only for the reasons stated below by letting **you** know in writing of the date cancellation takes effect. This cancellation notice may be delivered to the **named insured,** or mailed to the **named insured** at the **named insured's** mailing

address shown in the Declarations. Proof of mailing will be sufficient proof of notice.
    **(1)** When the **named insured** has not paid the premium, **we** may cancel at any time by letting the **named insured** know at least 10 days before the date cancellation takes effect.
    **(2)** When this Certificate has been in effect for less than 60 days and is not a renewal with **us, we** may cancel for any reason by letting the **named insured** know at least 10 days before the date cancellation takes effect.
    **(3)** When this Certificate has been in effect for 60 days or more, or at any time if it is a renewal with **us, we** may cancel:
        **(a)** If there has been a material misrepresentation of fact which if known to us would have caused **us** not to issue the Certificate; or
        **(b)** If the risk has changed substantially since the Certificate was issued.
        This can be done by letting the **named insured** know at least 30 days before the date cancellation takes effect.
    **(4)** When this Certificate is written for a period of more than one year, **we** may cancel for any reason at anniversary by letting the **named insured** know at least 30 days before the date cancellation takes effect.

    **c.** However, any individual Certificate shall automatically and immediately terminate, upon:
    **(1)** Payment in full of the obligation assumed under the mortgage agreement, except in cases where the **named insured** has specified otherwise; or
    **(2)** The effective date of other insurance obtained by the **borrower** which complies with the **named insured's** requirements.

    **d.** When this Certificate is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

    **e.** If the return premium is not refunded with the notice of cancellation or when this Certificate is returned to **us, we** will refund it within a reasonable time after the date cancellation takes effect.

17. **Non-Renewal. We** may elect not to renew this Certificate. **We** may do so by delivering to the **named insured,** or mailing to the **named insured** at the **named insured's** mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this Certificate. Proof of mailing will be sufficient proof of notice.

18. **Liberalization Clause.** If **we** make a change which broadens coverage under this edition of **our**

Includes copyrighted material of Insurance Services Office with its permission

Certificate without additional premium charge, that change will automatically apply to **your** insurance as of the date **we** implement the change in **your** state, provided that this implementation date falls within 60 days prior to or during the Certificate period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of **our** Certificate.

19. **Waiver or Change of Certificate Provisions.** A waiver or change of a provision of this Certificate must be in writing by **us** to be valid.  **Our** request for an appraisal or examination will not waive any of **our** rights.   No course of conduct nor any indulgences, waivers, extensions forbearances, non-enforcement of Certificate conditions, or the like, extended at or over any time or from time to time by the Company to the **named insured** or anyone shall waive, nullify, or modify any Certificate provision as to any other occasion or waive, nullify, or modify any other Certificate provision.

20. **Assignment.**  Assignment of this Certificate will not be valid unless **we** give **our** written consent.

21. **Nuclear Hazard Clause**
    a.  **Nuclear Hazard** means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.
    b.  Loss caused by the **nuclear hazard** will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.
    c.  This Certificate does not apply to loss caused directly or indirectly by **nuclear hazard,** except that direct loss by fire resulting from the **nuclear hazard** is covered.

22. **Salvage and Recoveries.** When, in connection with any loss covered by this Certificate, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be refigured on the basis of what it would have been settled for had the amount of salvage or recovery been known at the time the amount of loss was originally determined. Any amounts thus found to be due any party shall be promptly paid.

23. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

24. **Premiums.** The **named insured** is authorized to advance all funds to be recovered from the **borrower** for the insurance afforded and to act for such **borrower** in all matters pertaining to this insurance including receipt of notice of cancellation, and return premium, if any.

*In Witness Whereof*, **we** have caused this Certificate to be signed by **our** President and Secretary, but it shall not be valid unless countersigned on the Declarations by **our** authorized representative (where required by state law).

SECRETARY                                    PRESIDENT

Includes copyrighted material of Insurance Services Office with its permission

Mortgagee's Interest Protection
Residential Property
Florida Amendatory Endorsement

## THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.

## COVERAGES

### OTHER COVERAGES

3. **Reasonable Repairs** is deleted and replaced by the following:

3. **Reasonable Emergency Measures**
   a. **We** will pay up to the greater of $3,000 or 1% of **your** Coverage A limit of liability for the reasonable costs incurred by **you** for necessary measures taken solely to protect covered property from further damage, when the damage or loss is caused by a Peril Insured Against.
   b. **We** will not pay more than the amount in **a.** above, unless **we** provide **you** approval within 48 hours of **your** request to **us** to exceed the limit in **a.** above. In such circumstance, **we** will pay only up to the additional amount for the measures **we** authorize. If **we** fail to respond to **you** within 48 hours of **your** request to **us** and the damage or loss is caused by a Peril Insured Against, **you** may exceed the amount in **a.** above only up to the cost incurred by **you** for the reasonable emergency measures necessary to protect the covered property from further damage
   c. If, however, form MIP 304 FL is a part of **your** Certificate and a covered loss occurs during a hurricane, as described in form MIP 304 FL, the amount **we** pay under this Other Coverage is not limited to the amount in **a.** above.
   d. A reasonable measure taken under this Other Coverage 3. may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for **us** to inspect.
   e. This coverage does not:
      (1) Increase the limit of liability that applies to the covered property;
      (2) Relieve **you** of **your** duties, in case of a loss to covered property, as set forth in Condition 4.
      (3) Pay for property not covered, or for repairs resulting from a peril not covered, or for loss excluded in this Certificate.

## CONDITIONS

4. **Your Duties After Loss** is deleted and replaced by the following:

4. **Your Duties After Loss.** In case of a loss to covered property, **we** have no duty to provide coverage under this Certificate if the failure to comply with the following duties is prejudicial to **us**. These duties must be performed either by **you**, an **insured** seeking coverage, or a representative of either:

   a. Give prompt notice to **us** or **our** agent.

   Except for Reasonable Emergency Measures taken under Other Coverage 3.d., there is no coverage for repairs that begin before the earlier of:

   (1) 72 hours after **we** are notified of the loss;
   (2) The time of loss inspection by **us**; or
   (3) The time of other approval by **us**.

   A claim or reopened claim for loss or damage caused by hurricane or other windstorm is barred unless notice of claim is given to **us** in accordance with the terms of this Certificate within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from **us** for losses from the same hurricane or other windstorm which **we** have previously adjusted pursuant to the initial claim.)

   This provision concerning time for submission of claim, supplemental claim or reopened claim does not affect any limitation for legal action against **us** as provided in this Certificate under Legal Action Against Us, including any amendment to that condition;

   b. (1) To the degree reasonably possible, retain the damaged property; and
      (2) Allow **us** to inspect, subject to b.(1) above, all damaged property prior to its removal from the Described Location.
   c. Protect the covered property from further damage.  The following must be performed:
      (1) Take reasonable emergency measures that are necessary to protect the covered property from further damage, as provided under Other Coverage 3.d.;
      A reasonable emergency measure under c.(1) above may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for **us** to inspect.
      (2) Keep an accurate record of repair expenses;
   d. Cooperate with **us** or **our** representative in the investigation of a claim;

   e. As often as **we** reasonably require:

(1) Show the damaged **residential property**. However, if **we** require access to **you** or to the **residential property** that is the subject of a claim, **we** must provide at least 48 hours notice to **you**, **your** public adjuster or legal representative before scheduling a meeting with **you** or prior to conducting an onsite inspection of the **residential property**. **You** may deny access to the **residential property** if the notice has not been provided or may waive the 48-hour notice;

(2) Provide **us** with records and documents **we** request and permit **us** to make copies; and

(3) Submit to examination under oath, while not in the presence of any other **named insured**, and sign the same;

f. Send to **us**, within 60 days after **our** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

(1) The time and cause of loss;

(2) **Your** interest and that of all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the Certificate;

(5) Specifications of damaged **residential property** and detailed repair estimates.

The duties above apply regardless of whether **you**, an **insured** seeking coverage or a representative of either retains or is assisted by a party who provides legal advice or expert claim advice, regarding an insurance claim under this Certificate.

5. **Loss Settlement**, the following item **(5)** is added under paragraph **b.**:

(5) If the loss or damage occurs to pool enclosures, cabanas, screened porches or other shelter-type structures attached to the **dwelling**, **we** will pay no more than ten percent (10%) of the Limit of Liability of this Certificate applying to the **dwelling**. This Condition does not increase the Limit of Liability applying to the **dwelling**.

8. **Appraisal** is deleted and replaced by the following:

8. **Appraisal.**
If **we** and **you** disagree on the value of the **residential property** or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the **residential property** and amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding.
Each party will:
a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, **we** will still retain **our** right to deny the claim.

11. **Action Against Us** is deleted and replaced by the following:

11. **Action Against Us.** No action can be brought unless the Certificate provisions have been complied with and the action is started within five years after the date of loss.

16. **Cancellation**, paragraphs **b.** and **e.** are deleted and replaced by the following:

b. **We** may cancel this Certificate for only the reasons stated in this Condition by mailing or delivering written notice of cancellation to the **named insured** at the **named insured's** mailing address shown in the Declarations. The notice will include the reason for cancellation.

(1) If this Certificate has been in effect for 90 days or less, **we** may cancel this Certificate for any reason by notifying the **named insured**, at least:

(a) 10 days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

(b) 20 days before the effective date of cancellation, if **we** cancel for any other reason, except **we** may cancel immediately if there has been a material misstatement or misrepresentation or a failure to comply with underwriting requirements established by **us**.

(2) If this Certificate has been in effect for more than 90 days, **we** may cancel this Certificate only for one or more of the following reasons, at least:

(a) 10 days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

(b) 90 days before the **effective** date of cancellation if **we** cancel for one or more of the following reasons:

1) The Certificate was obtained by a material misstatement;

2) There has been failure to comply with underwriting requirements established by **us** within 90 days of the effective date of coverage;

3) There has been a substantial change in the risk covered by the Certificate;

4) The cancellation is for all insureds under such Certificates for a given class of insureds;

5) On the basis of property insurance claims that are the result of an act of God, if **we** can demonstrate, by claims frequency or otherwise, that

**you** have failed to take action reasonably necessary as requested by **us** to prevent recurrence of damage to the **residential property**;

6) On the basis of a single property insurance claim which is the result of water damage, if **we** can demonstrate that **you** have failed to take action reasonably requested by **us** to prevent a future similar occurrence of damage to the **residential property**; or

7) The cancellation of some or all of **our** Certificates is necessary to protect the best interests of the public or Certificateholders and such cancellation is approved by the Florida Office of Insurance Regulation.

e.  If the return premium is not refunded with the notice of cancellation or when this Certificate is returned to **us**, **we** will mail the refund within 15 working days after the date cancellation takes effect.

**17. Non-Renewal** is deleted and replaced by the following:

**17. Non-Renewal.**

a.  **We** may elect not to renew this Certificate. **We** may do so by notifying the **named insured** at least 90 days before the end of the Certificate period:

b.  Any notice of non-renewal will be mailed or delivered to the **named insured's** mailing address shown in the Declaration and will include the reason for non-renewal.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Mortgagee's Interest Protection
Wind, Hail and Hurricane – Florida
Mandatory Deductible Endorsement**

THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.

When loss occurs caused by the peril of **Windstorm**, **Hail or Hurricane**, the deductible will be the greater of 2% of the Limit of Liability or $2,000, per **described location**.

**Hurricane Occurrence:**

   a. Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;
   b. Continues for the time period during which the hurricane conditions exist anywhere in Florida; and
   c. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Mortgagee's Interest Protection
Residential Property
**Florida Catastrophic Ground Cover Collapse**
**& Sinkhole Loss Coverage Endorsement**

## THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.

## DEFINITIONS

The following definitions are added:

8. **Catastrophic Ground Cover Collapse** means geological activity that results in all of the following:
   a. The abrupt collapse of the ground cover;
   b. A depression in the ground cover clearly visible to the naked eye;
   c. **Structural damage** of the **dwelling** insured under this Certificate, including the foundation; and
   d. The **dwelling** being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that **dwelling**.

   **Catastrophic ground cover collapse** coverage does not apply to Coverage B structures.
9. **Sinkhole activity** means settlement or systematic weakening of the earth supporting the covered building. The settlement or systematic weakening must result from contemporaneous movement or raveling of soils, sediments or rock material into subterranean voids created by the effect of water on limestone or similar rock formations.
10. **Sinkhole loss** means **structural damage** to the **dwelling** or foundation:
    a. Arising out of; or
    b. Caused by;
    **sinkhole activity**.
11. **Structural Damage** means a **dwelling**, regardless of the date of its construction, has experienced the following:
    a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement-related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;
    b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement-related damage to the **primary structural members** or **primary structural systems** that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those **primary structural members** or **primary structural systems** exceed one and one-third the nominal strength allowed

under the Florida Building Code for new buildings of similar structure, purpose or location;
    c. Damage that results in listing, leaning or buckling of the exterior load-bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;
    d. Damage that results in the building, or any portion of the building containing **primary structural members** or **primary structural systems**, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or
    e. Damage occurring on or after October 15, 2005, that qualifies as substantial **structural damage** as defined in the Florida Building Code.
12. **Primary Structural Member** means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.
13. **Primary Structural System** means an assemblage of **primary structural members**.

## OTHER COVERAGES

The following Other Coverages are added:

8. **Catastrophic Ground Cover Collapse Coverage. We** will pay for loss to the **dwelling** caused by the peril of **catastrophic ground cover collapse**.
   This coverage does not increase the Coverage A Limit of Liability that applies to the damaged property.
9. **Sinkhole Loss Coverage.**
   **We** insure for direct physical loss to the **dwelling** caused by a **sinkhole loss**, including the costs incurred to:
   a. Stabilize the land and the **dwelling**; and
   b. Repair the foundation;
   in accordance with the recommendations of the professional engineer who verifies the presence of a **sinkhole loss** in compliance with Florida sinkhole standards and with notice to **you**.

Includes copyrighted material of Insurance Services Office with its permission

## GENERAL EXCLUSIONS

Paragraph **1.b. Earth Movement** is deleted and replaced by the following:

    **b.   Earth Movement.**
        Earth Movement means:
        **(1)** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;
        **(2)** Landslide, mudslide or mudflow;
        **(3)** Subsidence or sinkhole; or
        **(4)** Any other earth movement including earth sinking, rising or shifting;
        caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.
        This exclusion does not apply to loss by **catastrophic ground cover collapse** or **sinkhole loss.**

## CONDITIONS

**5.   Loss Settlement**
    With respect to a loss to the **dwelling** caused by a **sinkhole loss**, Paragraphs **c.** and **d.** of the **Loss Settlement** Condition are replaced by the following paragraphs:
    **c.**   **We** will pay no more than the actual cash value of the damaged property, not including underpinning or grouting or any other repair technique performed below the existing foundation of the **dwelling**, until **you** enter into a contract for the performance of building stabilization or foundation repairs, in accordance with the recommendations of the professional engineer's report and within 90 days after **we** notify **you** with confirmation of coverage for the **sinkhole loss**. If either **you** or **we** invoke the neutral evaluation process, the 90-day period begins anew 10 days after that process concludes. Once **you** enter into such contract, **we** will settle the loss as described in this condition and pay the amount necessary to begin and perform such repairs as work is performed and as expenses are incurred. The stabilization and all other repairs to the **dwelling** must be completed within 12 months after entering into such contract for repairs, unless:
        **(1)** There is a mutual agreement between **you** and **us**; or
        **(2)** The claim is:
            **(a)** Involved in neutral evaluation;
            **(b)** In litigation; or
            **(c)** Under mediation.

However, if the cost to repair or replace the damage is both:
    **(3)** Less than 5% of the amount of insurance in this Certificate on the building; and
    **(4)** Less than $2,500;
    **we** will settle the loss as noted in this condition whether or not **you** have entered into a contract to perform the building stabilization or foundation repairs.
    **d.**   If **we** deny **your** claim for **sinkhole loss** without performing testing as specified under Florida law, **you** may demand such testing by writing to **us** within 60 days after **you** receive **our** denial of the claim. **You** must pay the lesser of:
        **(1)** 50% of the actual costs of the analyses and services **we** provide under Florida law; or
        **(2)** $2,500.
    However, if the professional engineer or geologist selected or approved by **us** provides written certification of a **sinkhole loss**, **we** will reimburse **you** for the costs.
    **e.**   If **we**:
        **(1)** Receive written certification that there is no **sinkhole loss** or that the cause of damage was not **sinkhole activity** and determine that **you** submitted a claim for **sinkhole loss** without good faith grounds; and
        **(2)** **You** requested the testing, analysis and services **we** provided as specified under Florida law after **we** informed **you** in writing of **your** potential liability for reimbursement and gave **you** the opportunity to withdraw the claim,
    **you** must reimburse **us** for the lesser of:
        **(3)** 50% of the actual costs of the analyses and services we provided under Florida law; or
        **(4)** $2,500.
    **f.**   If the professional engineer selected or approved by **us** verifies a **sinkhole loss** but, before repairs have begun or expenses have been incurred, determines that the recommended repairs cannot be completed within the Certificate limits, **we** must either:
        **(1)** Complete the recommended repairs; or
        **(2)** Pay the Certificate limits.
    **g.**   If the repairs have begun and the professional engineer selected or approved by **us** determines that the recommended repairs cannot be completed within the Certificate limits, **we** must either:
        **(1)** Complete the recommended repairs; or
        **(2)** Pay the Certificate limits without a reduction for the repair expenses incurred.
    **h.**   As a precondition to accepting payment for a **sinkhole loss**, **you** must, at **your** own expense, file with the county clerk of the

court a copy of any sinkhole report regarding the insured property that was:

**(1)** Prepared on your behalf; or

**(2)** Requested by you.

**i.** **You** may not accept a rebate from any person performing repairs for **sinkhole loss** covered under this endorsement. If **you** receive a rebate, no coverage is provided under this endorsement and **you** must refund the amount of the rebate to **us**.

**8. Mediation Or Appraisal**

With respect to coverage provided by this endorsement, the **Mediation Or Appraisal** Condition is replaced by the following:

**8. Neutral Evaluation**

Following receipt by **us** of a report from a professional engineer or professional geologist on the cause of loss and recommendations for stabilizing the land and building and foundation repairs, or if **we** deny **your** claim, either party may file a request with the Florida Department of Financial Services (the Department) for neutral evaluation in accordance with the rules established by the Department. In this event, **you** and **we** shall mutually select a neutral evaluator from a list maintained by the Department. If **you** and **we** fail to agree on a neutral evaluator within 14 business days, the Department shall appoint a neutral evaluator. The neutral evaluator shall make reasonable efforts to hold the neutral evaluation conference within 90 days after receipt of the request by the Department. The neutral evaluator must be allowed reasonable access to the property being evaluated. Before the evaluator's physical inspection of the property, he or she must be provided with any reports initiated by **you** or **your** agent confirming a **sinkhole loss** or disputing another sinkhole report. The recommendation of the neutral evaluator will not be binding on **you** or **us**.

We will pay the reasonable costs associated with the neutral evaluation.

**11. Action Against Us**

With respect to coverage provided by this endorsement, the **Action Against Us** Condition is replaced by the following:

**11. Action Against Us**

No action can be brought against **us** unless there has been full compliance with all of the terms of this Certificate and the action is started within five years after the date of loss, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Mortgagee's Interest Protection
Residential Property
Inflation Protection Endorsement**

THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.

**OTHER COVERAGES**

The following item is added:

8.  **Inflation Protection**
    The Limit of Liability for Coverage A shown on the Declarations will be adjusted at Certificate anniversary by the national residential average building cost trend factor published by Marshall & Swift/Boeckh.
    The premium for this Certificate at the next anniversary date will be based on the Coverage A Limit of Liability determined on that date by the provisions of this coverage.
    The Coverage A Limit of Liability will not be reduced during the current Certificate term below that for which premium was paid.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.**

It is understood and agreed that throughout this Certificate **you** and **your** refer to the financial institution as **named insured** and the **borrower** shown in the Declarations.

**CONDITIONS**

5. **Loss Settlement**, paragraph **b.** is replaced by the following:

   **b.** Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   **We** will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

   **(1)** The Limit of Liability under this Certificate that applies to the **residential property**;

   **(2)** The replacement cost of that part of the **residential property** damaged with material of like kind and quality and for like use; or

   **(3)** The necessary amount actually spent to repair or replace the damaged **residential property**.

   **(4)** If the loss or damage occurs to pool enclosures, cabanas, screened porches or other shelter-type structures attached to the **dwelling**, **we** will pay no more than ten percent (10%) of the Limit of Liability of this Certificate applying to the **Dwelling**.  This Condition does not increase the Limit of Liability applying to the **Dwelling**.

12. **Loss Payment** is deleted and replaced by the following:

12. **Loss Payment.  We** will adjust all losses with the **named insured.**  Loss will be made payable to the **named insured** and the **borrower** as their interests appear, either by a single instrument or by separate instruments payable respectively to the **named insured** and the **borrower**, at **our** option.

   No coverage will be available to any mortgagee other than that shown as the **named insured** on the Declarations. Provided **you** have complied with all the terms of this Certificate, **we** will pay for covered loss or damage upon the earliest of the following:

   **a.** Within 20 days after **we** receive the sworn proof of loss and reach written agreement with **you;**

   **b.** Within 30 days after **we** receive the sworn proof of loss and:

   **(1)** There is an entry of a final judgment; or

   **(2)** There is a filing of an appraisal award with **us;** or

   **c.** Within 90 days of receiving notice of an initial, reopened or supplemental claim, unless **we** deny the claim during that time or factors beyond **our** control reasonably prevent such payment.  If a portion of the claim is denied, then the 90-day time period for payment of claim relates to the portion of the claim that is not denied.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# American Security Insurance Company

# IMPORTANT NOTICE

## Here are the facts:

| | |
|---|---|
| **1) We need to know you have insurance.** | Your mortgage loan requires that your property have appropriate insurance on it at all times. This is to protect all parties against uninsured damage to the property. |
| **2) You have been sent formal notice.** | You have received at least two legal notices on this subject (3 to 4 page letters explaining the need for insurance coverage and the lender-placed process). |
| **3) We have not heard from you.** | To date, we have not heard from you regarding your insurance and we do not have proof of coverage for your property.  We need to hear from you regarding proof of insurance coverage on your property. |

## Here is what you need to do:



**Get Insurance** – **Contact an authorized insurer or agent to obtain coverage** other than Lender Placed Insurance.

If you are not able to obtain coverage from an authorized insurer, you may be eligible for a policy from Florida's state-run insurer of last resort, **Citizens Property Insurance Corporation**.  You can contact Citizens at 1-888-685-1555 or log on to their website at www.citizensfla.com.

**Take Action** -The vast majority of mortgage holders prefer to select their own insurance carrier and their own coverage.  We encourage you to do the same. Lender-placed coverage is not the same as getting your own insurance. The cost may be higher and it may only provide limited protection for you.



**Log-on** – If you have any questions regarding the Consent Order that American Security Insurance Company has agreed to with the Florida Office of Insurance Regulation, please visit our website at
*http://www.assurantspecialtyproperty.com/news/Regulatory_Notices/Notice_10082013.html*
 or scan the QR Code below:



**Don't let this happen.  Avoid lender-placed insurance.**

NOTI1256 (03-14)                                                                                                    N1256-0314

# EXHIBIT "B"

## Advocate Public Adjusting

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

|  |  |
|---|---|
| Insured: | Nancy Ann & Delmar Scott Meyers |
| Property: | 4281 Pace Lane |
|  | Pace, FL 32571 |

| Claim Rep.: | Advocate Public Adjusting | Business: | (786) 310-6120 |
|---|---|---|---|
| Business: | 1558 NE 162nd Street Unit A | E-mail: | jason@paadvocate.com |
|  | Noth Miami Beach, FL 33162 |  |  |

**Claim Number:** 00102857003        **Policy Number:** MLR08578666511603        **Type of Loss:** Hurricane

| Date of Loss: | 9/16/2020 | Date Received: | |
|---|---|---|---|
| Date Inspected: | | Date Entered: | 6/7/2021 |

| Price List: | FLPE8X_JUN21 |
|---|---|
|  | Restoration/Service/Remodel |
| Estimate: | APA-DELMAR-SCOTT-2 |

**This is a repair estimate only. The insurance company policy may contain provisions that will reduce any payments that might be made. This is not an authorization to repair. Authorization to repair or guarantee of payment must come from the owner of the property. No adjuster or appraiser has the authority to authorize repair or guarantee of payment.**

**The following estimate has been prepared based on representation made by the insured. The work outlined in the following pages will be preformed in accordance with all the standards set forth by the South Florida Building Code. Any additional credits or work required by the client will be processed in the form of a change order.**

**Florida Statute 626.954 (1)**
**"Unfair Insurance Trade Practice Act"**
**Specifically addresses the matter of unfair claim settlement practices**
**1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should of done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.**

**Pursuant to s.817.234, Florida Statues, any person who, with the intent to injure, defraud, or deceive any insurer or insured, prepares, presents, or causes to be presented a proof of loss or estimate of cost or repair of damaged property in support of a claim under an insurance policy knowing that the proof of loss or estimate of claim or repairs contains false, incomplete, or misleading information concerning any fact or thing material the claim commits a felony of the third degree, punishable as provided in s.775.082, s.775.803, or s.775.084, Florida Statues.**

## Advocate Public Adjusting

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

### APA-DELMAR-SCOTT-2

#### Front Elevation

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Add. charge for a retrofit window | 8.00 EA | 0.00 | 216.28 | 10.19 | 348.08 | 2,088.51 |
| R&R Aluminum window- 12-23 sf (2 pane) | 5.00 EA | 23.93 | 294.84 | 75.79 | 333.94 | 2,003.58 |
| R&R Aluminum window- 24-32 sf | 3.00 EA | 37.48 | 371.12 | 58.87 | 256.94 | 1,541.61 |
| R&R Patio Cover - Attached - Aluminum | 373.54 SF | 2.16 | 15.58 | 311.16 | 1,387.58 | 8,325.34 |
| Totals:  Front Elevation | | | | 456.01 | 2,326.54 | 13,959.04 |

#### Right Elevation

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Add. charge for a retrofit window | 1.00 EA | 0.00 | 216.28 | 1.27 | 43.52 | 261.07 |
| R&R Aluminum window- 12-23 sf (2 pane) | 1.00 EA | 23.93 | 294.84 | 15.16 | 66.78 | 400.71 |
| Totals:  Right Elevation | | | | 16.43 | 110.30 | 661.78 |

#### Left Elevation

#### Left Elevation

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Add. charge for a retrofit window | 1.00 EA | 0.00 | 216.28 | 1.27 | 43.52 | 261.07 |
| R&R Aluminum window- 12-23 sf (2 pane) | 1.00 EA | 23.93 | 294.84 | 15.16 | 66.78 | 400.71 |
| R&R Exterior door - metal | 1.00 EA | 22.71 | 500.88 | 28.42 | 110.40 | 662.41 |
| Total:  Left Elevation | | | | 44.85 | 220.70 | 1,324.19 |

#### Rear Elevation

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Add. charge for a retrofit window | 5.00 EA | 0.00 | 216.28 | 6.37 | 217.56 | 1,305.33 |
| R&R Aluminum window- 12-23 sf (2 pane) | 5.00 EA | 23.93 | 294.84 | 75.79 | 333.94 | 2,003.58 |
| R&R Patio Cover - Attached - Aluminum | 613.36 SF | 2.16 | 15.58 | 510.93 | 2,278.40 | 13,670.34 |
| Totals:  Rear Elevation | | | | 593.09 | 2,829.90 | 16,979.25 |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

| Total: Left Elevation | | | **637.94** | **3,050.60** | **18,303.44** |
|---|---|---|---|---|---|

### Roof



### Shingle Roof

| | |
|---|---|
| 3,057.31  Surface Area | 30.57  Number of Squares |
| 273.37  Total Perimeter Length | 124.21  Total Ridge Length |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Two ladders with jacks and plank (per day) | 7.00 DA | 0.00 | 116.63 | 0.00 | 163.28 | 979.69 |
| Remove 3 tab - 25 yr. - composition shingle roofing - incl. felt | 30.57 SQ | 55.48 | 0.00 | 0.00 | 339.20 | 2,035.22 |
| 3 tab - 25 yr. - composition shingle roofing - incl. felt | 30.67 SQ | 0.00 | 415.80 | 210.85 | 2,592.70 | 15,556.14 |
| R&R Ridge cap - composition shingles | 124.21 LF | 2.26 | 3.63 | 9.48 | 148.22 | 889.29 |
| R&R Valley metal | 273.37 LF | 0.61 | 4.98 | 38.85 | 313.42 | 1,880.41 |
| R&R Roof vent - turbine type | 1.00 EA | 9.53 | 107.54 | 4.57 | 24.32 | 145.96 |
| R&R Sheathing - plywood - 5/8" CDX | 458.55 SF | 0.60 | 3.80 | 84.42 | 420.40 | 2,522.44 |
| Re-nailing of roof sheathing - complete re-nail | 3,057.31 SF | 0.00 | 0.21 | 4.28 | 129.26 | 775.58 |
| R&R Flashing - pipe jack - lead | 2.00 EA | 7.45 | 72.72 | 6.48 | 33.36 | 200.18 |
| R&R Drip edge/gutter apron | 273.37 LF | 0.35 | 2.46 | 21.81 | 158.00 | 947.98 |
| Digital satellite system - Detach & reset | 1.00 EA | 0.00 | 29.92 | 0.00 | 5.98 | 35.90 |
| Digital satellite system - alignment and calibration only | 1.00 EA | 0.00 | 89.77 | 0.00 | 17.96 | 107.73 |
| R&R Soffit - metal | 273.37 SF | 0.32 | 5.40 | 58.36 | 324.42 | 1,946.46 |
| Prime & paint exterior soffit - metal | 273.37 SF | 0.00 | 1.78 | 4.78 | 98.28 | 589.66 |
| R&R Fascia - metal | 273.37 LF | 0.35 | 4.30 | 37.31 | 261.70 | 1,570.14 |
| Prime & paint exterior fascia | 273.37 LF | 0.00 | 1.41 | 2.49 | 77.60 | 465.54 |
| Roofer - per hour | 32.00 HR | 0.00 | 104.11 | 0.00 | 666.30 | 3,997.82 |
| Totals:  Shingle Roof | | | | 483.68 | 5,774.40 | 34,646.18 |
| Total: Roof | | | | **483.68** | **5,774.40** | **34,646.18** |

### Exterior

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

### CONTINUED - Exterior

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Clean the surface area with pressure steam | 1,483.36 SF | 0.00 | 0.86 | 17.65 | 258.68 | 1,552.02 |
| R&R Storage shed - Metal | 1.00 EA | 198.66 | 2,551.50 | 132.33 | 576.50 | 3,458.99 |
| Totals: Exterior | | | | 149.98 | 835.18 | 5,011.01 |

### Main Level



**Entry/Foyer**      **Height: 9'**

| | |
|---|---|
| 331.05 SF Walls | 193.11 SF Ceiling |
| 524.16 SF Walls & Ceiling | 193.11 SF Floor |
| 21.46 SY Flooring | 33.08 LF Floor Perimeter |
| 55.67 LF Ceil. Perimeter | |

| **Missing Wall - Goes to Floor** | **7' 11" X 6' 8"** | **Opens into KITCHEN** |
|---|---|---|
| **Missing Wall** | **14' 8" X 9'** | **Opens into LIVING_ROOM** |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Heat/AC register - Mechanically attached - Detach & reset | 2.00 EA | 0.00 | 12.80 | 0.00 | 5.12 | 30.72 |
| Light fixture - Detach & reset | 1.00 EA | 0.00 | 48.50 | 0.00 | 9.70 | 58.20 |
| Chandelier - Detach & reset | 1.00 EA | 0.00 | 126.10 | 0.00 | 25.22 | 151.32 |
| R&R Batt insulation - 10" - R30 - unfaced batt | 193.11 SF | 0.38 | 1.37 | 11.90 | 69.98 | 419.82 |
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 193.11 SF | 0.45 | 2.86 | 7.84 | 129.40 | 776.43 |
| R&R Acoustic ceiling (popcorn) texture | 193.11 SF | 0.49 | 1.21 | 0.81 | 65.82 | 394.91 |
| R&R Window blind - PVC - 1" - 7.1 to 14 SF | 1.00 EA | 10.66 | 60.72 | 1.39 | 14.56 | 87.33 |
| Mirror - 1/4" plate glass | 123.50 SF | 0.00 | 17.37 | 108.15 | 450.68 | 2,704.03 |
| Outlet or switch - Detach & reset | 4.00 EA | 0.00 | 17.40 | 0.00 | 13.92 | 83.52 |
| Mask wall - plastic, paper, tape (per LF) | 55.67 LF | 0.00 | 1.58 | 1.01 | 17.80 | 106.71 |
| Seal more than the ceiling w/latex based stain blocker - one coat | 400.66 SF | 0.00 | 0.52 | 1.96 | 42.06 | 252.36 |
| Paint more than the ceiling - two coats | 400.66 SF | 0.00 | 0.87 | 7.01 | 71.12 | 426.70 |
| Paint door/window trim & jamb | 1.00 EA | 0.00 | 27.35 | 0.34 | 5.54 | 33.23 |
| Paint door slab only | 1.00 EA | 0.00 | 33.27 | 0.58 | 6.78 | 40.63 |
| Door knob/lockset - Detach & reset | 1.00 EA | 0.00 | 22.18 | 0.00 | 4.44 | 26.62 |
| Floor protection - self-adhesive plastic film | 193.11 SF | 0.00 | 0.57 | 1.89 | 22.40 | 134.36 |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

### CONTINUED - Entry/Foyer

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Paint baseboard - one coat | 33.08 LF | 0.00 | 0.82 | 0.21 | 5.46 | 32.80 |
| Clean floor | 193.11 SF | 0.00 | 0.36 | 0.00 | 13.90 | 83.42 |
| Totals:  Entry/Foyer | | | | 143.09 | 973.90 | 5,843.17 |



**Living Room**                                            **Height: Peaked**

| | |
|---|---|
| 421.94 SF Walls | 331.80 SF Ceiling |
| 753.75 SF Walls & Ceiling | 333.63 SF Floor |
| 37.07 SY Flooring | 51.67 LF Floor Perimeter |
| 51.86 LF Ceil. Perimeter | |

| **Missing Wall** | **14' 8" X 8'** | **Opens into ENTRY_FOYER** |
|---|---|---|
| **Missing Wall** | **10' 6" X 8'** | **Opens into KITCHEN** |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | 0.00 | 12.80 | 0.00 | 2.56 | 15.36 |
| Ceiling fan - Detach & reset | 1.00 EA | 0.00 | 172.73 | 0.00 | 34.54 | 207.27 |
| Remove Tear off painted acoustic ceiling (popcorn) texture | 331.80 SF | 0.96 | 0.00 | 0.00 | 63.70 | 382.23 |
| R&R Batt insulation - 10" - R30 - unfaced batt | 32.00 SF | 0.38 | 1.37 | 1.97 | 11.60 | 69.57 |
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 32.00 SF | 0.45 | 2.86 | 1.30 | 21.44 | 128.66 |
| R&R Acoustic ceiling (popcorn) texture | 331.80 SF | 0.49 | 1.21 | 1.39 | 113.10 | 678.55 |
| Stain & finish wood beam | 135.86 SF | 0.00 | 2.26 | 4.09 | 62.22 | 373.35 |
| R&R Window blind - PVC - 1" - 7.1 to 14 SF | 1.00 EA | 10.66 | 60.72 | 1.39 | 14.56 | 87.33 |
| Outlet or switch - Detach & reset | 5.00 EA | 0.00 | 17.40 | 0.00 | 17.40 | 104.40 |
| Mask wall - plastic, paper, tape (per LF) | 51.86 LF | 0.00 | 1.58 | 0.94 | 16.56 | 99.44 |
| Clean stone veneer | 36.17 SF | 0.00 | 0.79 | 0.08 | 5.74 | 34.39 |
| Seal more than the ceiling w/latex based stain blocker - one coat | 750.91 SF | 0.00 | 0.52 | 3.68 | 78.84 | 472.99 |
| Paint more than the ceiling - two coats | 750.91 SF | 0.00 | 0.87 | 13.14 | 133.28 | 799.71 |
| Paint door/window trim & jamb | 2.00 EA | 0.00 | 27.35 | 0.68 | 11.08 | 66.46 |
| Paint door slab only | 1.00 EA | 0.00 | 33.27 | 0.58 | 6.78 | 40.63 |
| Door knob/lockset - Detach & reset | 1.00 EA | 0.00 | 22.18 | 0.00 | 4.44 | 26.62 |
| Floor protection - self-adhesive plastic film | 333.63 SF | 0.00 | 0.57 | 3.27 | 38.70 | 232.14 |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

**CONTINUED - Living Room**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Paint baseboard - one coat | 51.67 LF | 0.00 | 0.82 | 0.33 | 8.54 | 51.24 |
| Final cleaning - construction - Residential | 333.63 SF | 0.00 | 0.22 | 0.00 | 14.68 | 88.08 |
| Clean floor | 333.63 SF | 0.00 | 0.36 | 0.00 | 24.02 | 144.13 |
| Totals:  Living Room | | | | 32.84 | 683.78 | 4,102.55 |



**Kitchen**          **Height: 9'**

| | | |
|---|---|---|
| 289.34 SF Walls | | 138.25 SF Ceiling |
| 427.59 SF Walls & Ceiling | | 138.25 SF Floor |
| 15.36 SY Flooring | | 28.92 LF Floor Perimeter |
| 47.33 LF Ceil. Perimeter | | |

| **Missing Wall - Goes to Floor** | 7' 11" X 6' 8" | Opens into ENTRY_FOYER |
|---|---|---|
| **Missing Wall** | 10' 6" X 9' | Opens into LIVING_ROOM |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Light fixture - Detach & reset | 1.00 EA | 0.00 | 48.50 | 0.00 | 9.70 | 58.20 |
| Remove Tear off painted acoustic ceiling (popcorn) texture | 138.25 SF | 0.96 | 0.00 | 0.00 | 26.54 | 159.26 |
| R&R Batt insulation - 10" - R30 - unfaced batt | 32.00 SF | 0.38 | 1.37 | 1.97 | 11.60 | 69.57 |
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 32.00 SF | 0.45 | 2.86 | 1.30 | 21.44 | 128.66 |
| R&R Acoustic ceiling (popcorn) texture | 138.25 SF | 0.49 | 1.21 | 0.58 | 47.12 | 282.72 |
| Refrigerator - Remove & reset | 1.00 EA | 0.00 | 34.61 | 0.00 | 6.92 | 41.53 |
| Refrig. water line - Disconnect & reconnect - with repairs | 1.00 EA | 0.00 | 95.78 | 1.36 | 19.44 | 116.58 |
| Range - electric - Remove & reset | 1.00 EA | 0.00 | 25.96 | 0.00 | 5.20 | 31.16 |
| Outlet or switch - Detach & reset | 6.00 EA | 0.00 | 17.40 | 0.00 | 20.88 | 125.28 |
| Mask wall - plastic, paper, tape (per LF) | 47.33 LF | 0.00 | 1.58 | 0.86 | 15.14 | 90.78 |
| Drywall patch / small repair, ready for paint | 1.00 EA | 0.00 | 91.68 | 0.20 | 18.38 | 110.26 |
| Texture drywall - smooth / skim coat | 57.87 SF | 0.00 | 1.60 | 0.53 | 18.62 | 111.74 |
| Seal part of the walls w/latex based stain blocker - one coat | 196.12 SF | 0.00 | 0.52 | 0.96 | 20.60 | 123.54 |
| Paint part of the walls - two coats | 196.12 SF | 0.00 | 0.87 | 3.43 | 34.80 | 208.85 |
| Floor protection - self-adhesive plastic film | 138.25 SF | 0.00 | 0.57 | 1.36 | 16.04 | 96.20 |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

**CONTINUED - Kitchen**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Paint baseboard - one coat | 7.23 LF | 0.00 | 0.82 | 0.05 | 1.20 | 7.18 |
| Final cleaning - construction - Residential | 138.25 SF | 0.00 | 0.22 | 0.00 | 6.08 | 36.50 |
| Clean floor | 138.25 SF | 0.00 | 0.36 | 0.00 | 9.96 | 59.73 |
| Totals: Kitchen | | | | 12.60 | 309.66 | 1,857.74 |



**Family Room**      **Height: 9'**

|  |  |
|---|---|
| 742.50 SF Walls | 424.31 SF Ceiling |
| 1,166.81 SF Walls & Ceiling | 424.31 SF Floor |
| 47.15 SY Flooring | 82.50 LF Floor Perimeter |
| 82.50 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Light fixture - Detach & reset | 1.00 EA | 0.00 | 48.50 | 0.00 | 9.70 | 58.20 |
| Remove Tear off painted acoustic ceiling (popcorn) texture | 424.31 SF | 0.96 | 0.00 | 0.00 | 81.46 | 488.80 |
| R&R Batt insulation - 10" - R30 - unfaced batt | 32.00 SF | 0.38 | 1.37 | 1.97 | 11.60 | 69.57 |
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 32.00 SF | 0.45 | 2.86 | 1.30 | 21.44 | 128.66 |
| R&R Acoustic ceiling (popcorn) texture | 424.31 SF | 0.49 | 1.21 | 1.78 | 144.62 | 867.73 |
| Drywall patch / small repair, ready for paint | 1.00 EA | 0.00 | 91.68 | 0.20 | 18.38 | 110.26 |
| Texture drywall | 742.50 SF | 0.00 | 1.60 | 6.76 | 238.96 | 1,433.72 |
| Outlet or switch - Detach & reset | 5.00 EA | 0.00 | 17.40 | 0.00 | 17.40 | 104.40 |
| Mask wall - plastic, paper, tape (per LF) | 82.50 LF | 0.00 | 1.58 | 1.50 | 26.38 | 158.23 |
| Seal the walls and ceiling w/latex based stain blocker - one coat | 1,166.81 SF | 0.00 | 0.52 | 5.72 | 122.48 | 734.94 |
| Paint the walls and ceiling - two coats | 1,166.81 SF | 0.00 | 0.87 | 20.42 | 207.10 | 1,242.64 |
| Paint door/window trim & jamb | 5.00 EA | 0.00 | 27.35 | 1.69 | 27.70 | 166.14 |
| Paint door slab only | 3.00 EA | 0.00 | 33.27 | 1.73 | 20.30 | 121.84 |
| Door knob/lockset - Detach & reset | 3.00 EA | 0.00 | 22.18 | 0.00 | 13.30 | 79.84 |
| Floor protection - self-adhesive plastic film | 424.31 SF | 0.00 | 0.57 | 4.16 | 49.22 | 295.24 |
| Paint baseboard - one coat | 82.50 LF | 0.00 | 0.82 | 0.52 | 13.64 | 81.81 |
| Clean floor | 424.31 SF | 0.00 | 0.36 | 0.00 | 30.56 | 183.31 |

## Advocate Public Adjusting

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

### CONTINUED - Family Room

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Totals: Family Room | | | | 47.75 | 1,054.24 | 6,325.33 |

**Family/Closet**                                                                 **Height: 9'**

229.50 SF Walls                          40.64 SF Ceiling
270.14 SF Walls & Ceiling                40.64 SF Floor
4.52 SY Flooring                         25.50 LF Floor Perimeter
25.50 LF Ceil. Perimeter

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Light fixture - Detach & reset | 1.00 EA | 0.00 | 48.50 | 0.00 | 9.70 | 58.20 |
| R&R Batt insulation - 10" - R30 - unfaced batt | 40.64 SF | 0.38 | 1.37 | 2.50 | 14.72 | 88.34 |
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 40.64 SF | 0.45 | 2.86 | 1.65 | 27.24 | 163.41 |
| Drywall patch / small repair, ready for paint | 1.00 EA | 0.00 | 91.68 | 0.20 | 18.38 | 110.26 |
| Texture drywall | 270.14 SF | 0.00 | 1.60 | 2.46 | 86.94 | 521.62 |
| Closet shelf and rod package - Detach & reset | 12.11 LF | 0.00 | 11.57 | 0.00 | 28.02 | 168.13 |
| Outlet or switch - Detach & reset | 1.00 EA | 0.00 | 17.40 | 0.00 | 3.48 | 20.88 |
| Mask wall - plastic, paper, tape (per LF) | 25.50 LF | 0.00 | 1.58 | 0.46 | 8.16 | 48.91 |
| Seal the walls and ceiling w/latex based stain blocker - one coat | 270.14 SF | 0.00 | 0.52 | 1.32 | 28.36 | 170.15 |
| Paint the walls and ceiling - two coats | 270.14 SF | 0.00 | 0.87 | 4.73 | 47.94 | 287.69 |
| Paint door/window trim & jamb | 1.00 EA | 0.00 | 27.35 | 0.34 | 5.54 | 33.23 |
| Floor protection - self-adhesive plastic film | 40.64 SF | 0.00 | 0.57 | 0.40 | 4.72 | 28.28 |
| Paint baseboard - one coat | 25.50 LF | 0.00 | 0.82 | 0.16 | 4.22 | 25.29 |
| Clean floor | 40.64 SF | 0.00 | 0.36 | 0.00 | 2.92 | 17.55 |
| Totals: Family/Closet | | | | 14.22 | 290.34 | 1,741.94 |

## Advocate Public Adjusting

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162



| **Laundry Room** | | | | | **Height: 9'** |
|---|---|---|---|---|---|

| | | | | |
|---|---|---|---|
| 382.50 SF Walls | | 94.47 SF Ceiling | |
| 476.97 SF Walls & Ceiling | | 94.47 SF Floor | |
| 10.50 SY Flooring | | 42.50 LF Floor Perimeter | |
| 42.50 LF Ceil. Perimeter | | | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Light fixture - Detach & reset | 1.00 EA | 0.00 | 48.50 | 0.00 | 9.70 | 58.20 |
| R&R Batt insulation - 10" - R30 - unfaced batt | 32.00 SF | 0.38 | 1.37 | 1.97 | 11.60 | 69.57 |
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 32.00 SF | 0.45 | 2.86 | 1.30 | 21.44 | 128.66 |
| Drywall patch / small repair, ready for paint | 1.00 EA | 0.00 | 91.68 | 0.20 | 18.38 | 110.26 |
| Texture drywall | 476.97 SF | 0.00 | 1.60 | 4.34 | 153.50 | 920.99 |
| Washing machine - Remove & reset | 1.00 EA | 0.00 | 33.67 | 0.00 | 6.74 | 40.41 |
| Dryer - Remove & reset | 1.00 EA | 0.00 | 25.96 | 0.00 | 5.20 | 31.16 |
| Outlet or switch - Detach & reset | 4.00 EA | 0.00 | 17.40 | 0.00 | 13.92 | 83.52 |
| Mask wall - plastic, paper, tape (per LF) | 42.50 LF | 0.00 | 1.58 | 0.77 | 13.60 | 81.52 |
| Seal the walls and ceiling w/latex based stain blocker - one coat | 476.97 SF | 0.00 | 0.52 | 2.34 | 50.06 | 300.42 |
| Paint the walls and ceiling - two coats | 476.97 SF | 0.00 | 0.87 | 8.35 | 84.68 | 507.99 |
| Paint door/window trim & jamb | 1.00 EA | 0.00 | 27.35 | 0.34 | 5.54 | 33.23 |
| Paint door slab only | 1.00 EA | 0.00 | 33.27 | 0.58 | 6.78 | 40.63 |
| Door knob/lockset - Detach & reset | 1.00 EA | 0.00 | 22.18 | 0.00 | 4.44 | 26.62 |
| Floor protection - self-adhesive plastic film | 94.47 SF | 0.00 | 0.57 | 0.93 | 10.96 | 65.74 |
| Paint baseboard - one coat | 42.50 LF | 0.00 | 0.82 | 0.27 | 7.04 | 42.16 |
| Clean floor | 94.47 SF | 0.00 | 0.36 | 0.00 | 6.80 | 40.81 |
| Totals:  Laundry Room | | | | 21.39 | 430.38 | 2,581.89 |

| **Hallway** | | | | | **Height: 8'** |
|---|---|---|---|---|---|

| | | | | |
|---|---|---|---|
| 345.33 SF Walls | | 56.87 SF Ceiling | |
| 402.20 SF Walls & Ceiling | | 56.87 SF Floor | |
| 6.32 SY Flooring | | 43.17 LF Floor Perimeter | |
| 43.17 LF Ceil. Perimeter | | | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

**CONTINUED - Hallway**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| No visible damage to this room. | | | | | | |
| Totals: Hallway | | | | 0.00 | 0.00 | 0.00 |



**Bedroom 1**                                                                      Height: 8'

| | | |
|---|---|---|
| 292.67 SF Walls | | 100.77 SF Ceiling |
| 393.44 SF Walls & Ceiling | | 100.77 SF Floor |
| 11.20 SY Flooring | | 36.58 LF Floor Perimeter |
| 36.58 LF Ceil. Perimeter | | |

**Missing Wall**                        7' 5" X 8'                **Opens into Exterior**



**Subroom:  Closet (3)**                                                          Height: 8'

| | | |
|---|---|---|
| 97.33 SF Walls | | 8.17 SF Ceiling |
| 105.50 SF Walls & Ceiling | | 8.17 SF Floor |
| 0.91 SY Flooring | | 12.17 LF Floor Perimeter |
| 12.17 LF Ceil. Perimeter | | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Ceiling fan - Detach & reset | 1.00 EA | 0.00 | 172.73 | 0.00 | 34.54 | 207.27 |
| R&R Batt insulation - 10" - R30 - unfaced batt | 108.94 SF | 0.38 | 1.37 | 6.71 | 39.48 | 236.84 |
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 108.94 SF | 0.45 | 2.86 | 4.42 | 73.00 | 438.01 |
| Acoustic ceiling (popcorn) texture | 108.94 SF | 0.00 | 1.21 | 0.46 | 26.46 | 158.74 |
| Outlet or switch - Detach & reset | 4.00 EA | 0.00 | 17.40 | 0.00 | 13.92 | 83.52 |
| Mask wall - plastic, paper, tape (per LF) | 48.75 LF | 0.00 | 1.58 | 0.89 | 15.58 | 93.50 |
| R&R Crown molding - 3 1/4" | 48.75 LF | 0.71 | 4.42 | 5.36 | 51.10 | 306.55 |
| Seal & paint crown molding - two coats | 48.75 LF | 0.00 | 1.32 | 0.48 | 12.98 | 77.81 |
| Drywall patch / small repair, ready for paint | 1.00 EA | 0.00 | 91.68 | 0.20 | 18.38 | 110.26 |
| Texture drywall | 390.00 SF | 0.00 | 1.60 | 3.55 | 125.52 | 753.07 |
| Seal the walls and ceiling w/latex based stain blocker - one coat | 498.94 SF | 0.00 | 0.52 | 2.45 | 52.40 | 314.30 |
| Paint the walls and ceiling - two coats | 498.94 SF | 0.00 | 0.87 | 8.73 | 88.56 | 531.37 |
| Paint door/window trim & jamb | 1.00 EA | 0.00 | 27.35 | 0.34 | 5.54 | 33.23 |
| Paint door slab only | 1.00 EA | 0.00 | 33.27 | 0.58 | 6.78 | 40.63 |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

**CONTINUED - Bedroom 1**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Door knob/lockset - Detach & reset | 1.00 EA | 0.00 | 22.18 | 0.00 | 4.44 | 26.62 |
| Floor protection - self-adhesive plastic film | 108.94 SF | 0.00 | 0.57 | 1.07 | 12.64 | 75.81 |
| Paint baseboard - one coat | 48.75 LF | 0.00 | 0.82 | 0.31 | 8.06 | 48.35 |
| Clean floor | 108.94 SF | 0.00 | 0.36 | 0.00 | 7.84 | 47.06 |
| Totals:  Bedroom 1 | | | | 35.55 | 597.22 | 3,582.94 |



| Bathroom | | | Height: 8' |
|---|---|---|---|
| 218.67 SF Walls | | 43.92 SF Ceiling | |
| 262.58 SF Walls & Ceiling | | 43.92 SF Floor | |
| 4.88 SY Flooring | | 27.33 LF Floor Perimeter | |
| 27.33 LF Ceil. Perimeter | | | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| **No visible damage to this room.** | | | | | | |
| Totals:  Bathroom | | | | 0.00 | 0.00 | 0.00 |



| Bedroom 2 | | | Height: 8' |
|---|---|---|---|
| 338.67 SF Walls | | 110.44 SF Ceiling | |
| 449.11 SF Walls & Ceiling | | 110.44 SF Floor | |
| 12.27 SY Flooring | | 42.33 LF Floor Perimeter | |
| 42.33 LF Ceil. Perimeter | | | |

| Subroom:  Closet (1) | | | Height: 8' |
|---|---|---|---|
| 110.67 SF Walls | | 9.83 SF Ceiling | |
| 120.50 SF Walls & Ceiling | | 9.83 SF Floor | |
| 1.09 SY Flooring | | 13.83 LF Floor Perimeter | |
| 13.83 LF Ceil. Perimeter | | | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Ceiling fan - Detach & reset | 1.00 EA | 0.00 | 172.73 | 0.00 | 34.54 | 207.27 |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

### CONTINUED - Bedroom 2

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| R&R Batt insulation - 10" - R30 - unfaced batt | 120.28 SF | 0.38 | 1.37 | 7.41 | 43.58 | 261.48 |
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 120.28 SF | 0.45 | 2.86 | 4.88 | 80.60 | 483.61 |
| Acoustic ceiling (popcorn) texture | 120.28 SF | 0.00 | 1.21 | 0.51 | 29.20 | 175.25 |
| Window blind - horizontal or vertical - Detach & reset | 1.00 EA | 0.00 | 33.23 | 0.00 | 6.64 | 39.87 |
| Window drapery - hardware - Detach & reset | 1.00 EA | 0.00 | 33.23 | 0.00 | 6.64 | 39.87 |
| Window drapery - remove and rehang - per hour | 1.00 HR | 0.00 | 55.79 | 0.00 | 11.16 | 66.95 |
| Outlet or switch - Detach & reset | 4.00 EA | 0.00 | 17.40 | 0.00 | 13.92 | 83.52 |
| Mask wall - plastic, paper, tape (per LF) | 56.17 LF | 0.00 | 1.58 | 1.02 | 17.96 | 107.73 |
| Drywall patch / small repair, ready for paint | 1.00 EA | 0.00 | 91.68 | 0.20 | 18.38 | 110.26 |
| Texture drywall | 449.33 SF | 0.00 | 1.60 | 4.09 | 144.60 | 867.62 |
| Seal the walls and ceiling w/latex based stain blocker - one coat | 569.61 SF | 0.00 | 0.52 | 2.79 | 59.80 | 358.79 |
| Paint the walls and ceiling - two coats | 569.61 SF | 0.00 | 0.87 | 9.97 | 101.12 | 606.65 |
| Paint door/window trim & jamb | 1.00 EA | 0.00 | 27.35 | 0.34 | 5.54 | 33.23 |
| Paint door slab only | 1.00 EA | 0.00 | 33.27 | 0.58 | 6.78 | 40.63 |
| Door knob/lockset - Detach & reset | 1.00 EA | 0.00 | 22.18 | 0.00 | 4.44 | 26.62 |
| Floor protection - self-adhesive plastic film | 120.28 SF | 0.00 | 0.57 | 1.18 | 13.96 | 83.70 |
| Paint baseboard - one coat | 56.17 LF | 0.00 | 0.82 | 0.35 | 9.30 | 55.71 |
| Clean floor | 120.28 SF | 0.00 | 0.36 | 0.00 | 8.66 | 51.96 |

| | | | | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Totals:  Bedroom 2 | | | | 33.32 | 616.82 | 3,700.72 |



**Master Bedroom**                                       **Height: 8'**

445.33 SF Walls                 185.65 SF Ceiling
630.98 SF Walls & Ceiling     185.65 SF Floor
20.63 SY Flooring            55.67 LF Floor Perimeter
55.67 LF Ceil. Perimeter

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Ceiling fan - Detach & reset | 1.00 EA | 0.00 | 172.73 | 0.00 | 34.54 | 207.27 |
| R&R Batt insulation - 10" - R30 - unfaced batt | 185.65 SF | 0.38 | 1.37 | 11.44 | 67.26 | 403.59 |

## Advocate Public Adjusting

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

**CONTINUED - Master Bedroom**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 185.65 SF | 0.45 | 2.86 | 7.54 | 124.40 | 746.44 |
| Acoustic ceiling (popcorn) texture | 185.65 SF | 0.00 | 1.21 | 0.78 | 45.08 | 270.50 |
| Window blind - horizontal or vertical - Detach & reset | 1.00 EA | 0.00 | 33.23 | 0.00 | 6.64 | 39.87 |
| Outlet or switch - Detach & reset | 4.00 EA | 0.00 | 17.40 | 0.00 | 13.92 | 83.52 |
| Mask wall - plastic, paper, tape (per LF) | 55.67 LF | 0.00 | 1.58 | 1.01 | 17.80 | 106.77 |
| Drywall patch / small repair, ready for paint | 1.00 EA | 0.00 | 91.68 | 0.20 | 18.38 | 110.26 |
| Texture drywall | 445.33 SF | 0.00 | 1.60 | 4.05 | 143.32 | 859.90 |
| Seal the walls and ceiling w/latex based stain blocker - one coat | 630.98 SF | 0.00 | 0.52 | 3.09 | 66.24 | 397.44 |
| Paint the walls and ceiling - two coats | 630.98 SF | 0.00 | 0.87 | 11.04 | 112.00 | 671.99 |
| Paint door/window trim & jamb | 1.00 EA | 0.00 | 27.35 | 0.34 | 5.54 | 33.23 |
| Paint door slab only | 1.00 EA | 0.00 | 33.27 | 0.58 | 6.78 | 40.63 |
| Door knob/lockset - Detach & reset | 1.00 EA | 0.00 | 22.18 | 0.00 | 4.44 | 26.62 |
| Floor protection - self-adhesive plastic film | 185.65 SF | 0.00 | 0.57 | 1.82 | 21.52 | 129.16 |
| Paint baseboard - one coat | 55.67 LF | 0.00 | 0.82 | 0.35 | 9.22 | 55.22 |
| Clean floor | 185.65 SF | 0.00 | 0.36 | 0.00 | 13.36 | 80.19 |
| Totals:  Master Bedroom | | | | 42.24 | 710.44 | 4,262.60 |



**Master Closet**  **Height: 8'**

| 225.33 SF Walls | 42.26 SF Ceiling |
|---|---|
| 267.60 SF Walls & Ceiling | 42.26 SF Floor |
| 4.70 SY Flooring | 28.17 LF Floor Perimeter |
| 28.17 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Light fixture - Detach & reset | 1.00 EA | 0.00 | 48.50 | 0.00 | 9.70 | 58.20 |
| R&R Batt insulation - 10" - R30 - unfaced batt | 42.26 SF | 0.38 | 1.37 | 2.60 | 15.32 | 91.88 |
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 42.26 SF | 0.45 | 2.86 | 1.72 | 28.32 | 169.92 |
| Drywall patch / small repair, ready for paint | 1.00 EA | 0.00 | 91.68 | 0.20 | 18.38 | 110.26 |
| Texture drywall | 267.60 SF | 0.00 | 1.60 | 2.44 | 86.12 | 516.72 |

## Advocate Public Adjusting

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

### CONTINUED - Master Closet

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Shelving - wire (vinyl coated) - Detach & reset | 20.92 LF | 0.00 | 10.04 | 0.00 | 42.00 | 252.04 |
| Outlet or switch - Detach & reset | 1.00 EA | 0.00 | 17.40 | 0.00 | 3.48 | 20.88 |
| Mask wall - plastic, paper, tape (per LF) | 28.17 LF | 0.00 | 1.58 | 0.51 | 9.00 | 54.02 |
| Seal the walls and ceiling w/latex based stain blocker - one coat | 267.60 SF | 0.00 | 0.52 | 1.31 | 28.10 | 168.56 |
| Paint the walls and ceiling - two coats | 267.60 SF | 0.00 | 0.87 | 4.68 | 47.50 | 284.99 |
| Paint door/window trim & jamb | 1.00 EA | 0.00 | 27.35 | 0.34 | 5.54 | 33.23 |
| Paint door slab only | 1.00 EA | 0.00 | 33.27 | 0.58 | 6.78 | 40.63 |
| Door knob/lockset - Detach & reset | 1.00 EA | 0.00 | 22.18 | 0.00 | 4.44 | 26.62 |
| Floor protection - self-adhesive plastic film | 42.26 SF | 0.00 | 0.57 | 0.41 | 4.90 | 29.40 |
| Paint baseboard - one coat | 28.17 LF | 0.00 | 0.82 | 0.18 | 4.66 | 27.94 |
| Clean floor | 42.26 SF | 0.00 | 0.36 | 0.00 | 3.04 | 18.25 |
| Totals:  Master Closet | | | | 14.97 | 317.28 | 1,903.54 |



| **Master Bathroom** | | | | | | **Height: 8'** |
|---|---|---|---|---|---|---|

226.67  SF Walls
271.81  SF Walls & Ceiling
5.02  SY Flooring
28.33  LF Ceil. Perimeter

45.14  SF Ceiling
45.14  SF Floor
28.33  LF Floor Perimeter

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| R&R Batt insulation - 10" - R30 - unfaced batt | 45.14 SF | 0.38 | 1.37 | 2.78 | 16.36 | 98.13 |
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 45.14 SF | 0.45 | 2.86 | 1.83 | 30.24 | 181.48 |
| R&R Acoustic ceiling (popcorn) texture | 45.14 SF | 0.49 | 1.21 | 0.19 | 15.38 | 92.31 |
| 1/2" water rock (greenboard) hung, taped ready for texture | 43.50 SF | 0.00 | 2.50 | 1.92 | 22.14 | 132.81 |
| Texture drywall | 181.33 SF | 0.00 | 1.60 | 1.65 | 58.36 | 350.14 |
| Cabinetry - upper (wall) units - Detach & reset | 4.10 LF | 0.00 | 61.95 | 0.00 | 50.80 | 304.80 |
| Mirror - plate glass - Detach & reset | 3.30 SF | 0.00 | 5.98 | 0.00 | 3.94 | 23.67 |
| Sink faucet - Detach & reset | 1.00 EA | 0.00 | 129.16 | 0.00 | 25.84 | 155.00 |
| Sink - single - Detach & reset | 1.00 EA | 0.00 | 161.04 | 0.00 | 32.20 | 193.24 |
| Vanity - Detach & reset | 4.10 LF | 0.00 | 61.95 | 0.00 | 50.80 | 304.80 |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

**CONTINUED - Master Bathroom**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Toilet - Detach & reset | 1.00 EA | 0.00 | 261.49 | 0.44 | 52.38 | 314.31 |
| Outlet or switch - Detach & reset | 1.00 EA | 0.00 | 17.40 | 0.00 | 3.48 | 20.88 |
| Mask wall - plastic, paper, tape (per LF) | 28.33 LF | 0.00 | 1.58 | 0.52 | 9.06 | 54.34 |
| Seal part of the walls w/latex based stain blocker - one coat | 226.47 SF | 0.00 | 0.52 | 1.11 | 23.78 | 142.65 |
| Paint part of the walls - two coats | 226.47 SF | 0.00 | 0.87 | 3.96 | 40.20 | 241.19 |
| Paint door/window trim & jamb | 1.00 EA | 0.00 | 27.35 | 0.34 | 5.54 | 33.23 |
| Paint door slab only | 1.00 EA | 0.00 | 33.27 | 0.58 | 6.78 | 40.63 |
| Door knob/lockset - Detach & reset | 1.00 EA | 0.00 | 22.18 | 0.00 | 4.44 | 26.62 |
| Floor protection - self-adhesive plastic film | 45.14 SF | 0.00 | 0.57 | 0.44 | 5.22 | 31.39 |
| Paint baseboard - one coat | 28.33 LF | 0.00 | 0.82 | 0.18 | 4.68 | 28.09 |
| Clean floor | 45.14 SF | 0.00 | 0.36 | 0.00 | 3.26 | 19.51 |
| Totals:  Master Bathroom | | | | 15.94 | 464.88 | 2,789.22 |
| Total: Main Level | | | | **413.91** | **6,448.94** | **38,691.64** |

**General**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Off-site storage & insur. - climate controlled - per month | 800.00 SF | 0.00 | 0.92 | 17.66 | 147.20 | 900.86 |
| Added for a 800 SF unit for 1 months. | | | | | | |
| Bubble Wrap - Add-on cost for fragile items | 1,200.00 LF | 0.00 | 0.22 | 18.48 | 56.50 | 338.98 |
| General clean - up | 24.00 HR | 0.00 | 36.07 | 0.02 | 173.14 | 1,038.84 |
| Inventory, Packing, Boxing, and Moving charge - per hour | 16.00 HR | 0.00 | 32.26 | 0.00 | 103.24 | 619.40 |
| Provide furniture heavyweight blanket/pad | 30.00 EA | 0.00 | 16.97 | 35.64 | 108.94 | 653.68 |
| Temporary power usage (per month) | 2.00 MO | 0.00 | 135.69 | 19.00 | 58.08 | 348.46 |
| Electrician - per hour | 165.00 HR | 0.00 | 90.63 | 0.00 | 2,990.80 | 17,944.75 |
| Cleaning Technician - per hour | 48.00 HR | 0.00 | 36.06 | 0.00 | 346.18 | 2,077.06 |
| **2 Tech for 24 hours.** | | | | | | |
| Dumpster load - Approx. 40 yards, 7-8 tons of debris | 1.00 EA | 704.00 | 0.00 | 0.00 | 140.80 | 844.80 |
| Residential Supervision / Project Management - per hour | 8.00 HR | 0.00 | 58.32 | 0.00 | 93.32 | 559.88 |
| R&R Sheathing - plywood - 1/2" CDX | 128.00 SF | 0.60 | 3.30 | 21.86 | 104.22 | 625.28 |

## Advocate Public Adjusting

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

**CONTINUED - General**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| To protect driveway/walkways due to dumpster placement and construction operations. | | | | | | |
| **A complete pack out of affected areas figured due to the scope of repairs.  If contents were left, they would need to be moved multiple times adding additional liability and work.** | | | | | | |
| Provide wardrobe box & tape - large size | 8.00 EA | 0.00 | 20.04 | 11.22 | 34.30 | 205.84 |
| Provide mirror/picture box, packing paper & tape | 15.00 EA | 0.00 | 8.00 | 8.40 | 25.68 | 154.08 |
| Provide box, packing paper & tape - large size | 35.00 EA | 0.00 | 4.48 | 3.77 | 31.36 | 191.93 |
| Boxes and furniture pads are based off of an approximation of contents.  Actual quantities may vary. | | | | | | |
| Moving van (21'-27') and equipment - per day | 2.00 EA | 0.00 | 180.00 | 0.00 | 72.00 | 432.00 |
| Above line item added for trip to remove content items and trip to return content items. | | | | | | |
| Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | 0.00 | 5,204.50 | 0.00 | 0.00 | 5,204.50 |
| Totals:  General | | | | 136.05 | 4,485.76 | 32,140.34 |

**Labor Minimums Applied**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Door labor minimum | 1.00 EA | 0.00 | 82.60 | 0.00 | 16.52 | 99.12 |
| Heat, vent, & air cond. labor minimum | 1.00 EA | 0.00 | 175.61 | 0.00 | 35.12 | 210.73 |
| Totals:  Labor Minimums Applied | | | | 0.00 | 51.64 | 309.85 |
| **Line Item Totals: APA-DELMAR-SCOTT-2** | | | | **2,294.00** | **23,083.36** | **143,723.28** |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 4,697.50 | SF Walls | 1,825.63 | SF Ceiling | 6,523.13 | SF Walls and Ceiling |
| 1,827.45 | SF Floor | 203.05 | SY Flooring | 551.75 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 592.94 | LF Ceil. Perimeter |
| | | | | | |
| 1,827.45 | Floor Area | 1,960.59 | Total Area | 4,697.50 | Interior Wall Area |
| 2,319.47 | Exterior Wall Area | 229.33 | Exterior Perimeter of Walls | | |
| | | | | | |
| 3,057.31 | Surface Area | 30.57 | Number of Squares | 273.37 | Total Perimeter Length |
| 124.21 | Total Ridge Length | 0.00 | Total Hip Length | | |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 138,652.23 | 96.47% | 138,652.23 | 96.47% |
| Other Structures | 3,458.99 | 2.41% | 3,458.99 | 2.41% |
| Contents | 1,612.06 | 1.12% | 1,612.06 | 1.12% |
| Total | 143,723.28 | 100.00% | 143,723.28 | 100.00% |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 114,306.50 |
| Material Sales Tax | 2,086.12 |
| Subtotal | 116,392.62 |
| Overhead | 11,119.09 |
| Profit | 11,119.09 |
| Laundering Tax | 21.43 |
| **Replacement Cost Value** | **$138,652.23** |
| **Net Claim** | **$138,652.23** |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

### Summary for Other Structures

| | |
|---|---:|
| Line Item Total | 2,750.16 |
| Material Sales Tax | 132.33 |
| Subtotal | 2,882.49 |
| Overhead | 288.25 |
| Profit | 288.25 |
| **Replacement Cost Value** | **$3,458.99** |
| **Net Claim** | **$3,458.99** |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

## Summary for Contents

| | |
|---|---:|
| Line Item Total | 1,289.26 |
| Material Sales Tax | 54.12 |
| Subtotal | 1,343.38 |
| Overhead | 134.34 |
| Profit | 134.34 |
| **Replacement Cost Value** | **$1,612.06** |
| **Net Claim** | **$1,612.06** |

## Advocate Public Adjusting

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (7%) | Laundering Tax (2%) | Manuf. Home Tax (6%) | Storage Rental Tax (7%) |
|---|---|---|---|---|---|---|
| **Line Items** | | | | | | |
| | 11,541.68 | 11,541.68 | 2,272.57 | 21.43 | 0.00 | 0.00 |
| **Total** | | | | | | |
| | **11,541.68** | **11,541.68** | **2,272.57** | **21.43** | **0.00** | **0.00** |

## Advocate Public Adjusting

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

## Recap by Room

**Estimate: APA-DELMAR-SCOTT-2**

| | | | |
|---|---|---|---|
| **Front Elevation** | | **11,176.49** | **9.44%** |
| Coverage: Dwelling | 100.00% = | 11,176.49 | |
| **Right Elevation** | | **535.05** | **0.45%** |
| Coverage: Dwelling | 100.00% = | 535.05 | |
| | | | |
| **Area: Left Elevation** | | **1,058.64** | **0.89%** |
| Coverage: Dwelling | 100.00% = | 1,058.64 | |
| **Rear Elevation** | | **13,556.26** | **11.45%** |
| Coverage: Dwelling | 100.00% = | 13,556.26 | |
| | | | |
| **Area Subtotal:  Left Elevation** | | **14,614.90** | **12.35%** |
| Coverage: Dwelling | 100.00% = | 14,614.90 | |
| **Area: Roof** | | | |
| **Shingle Roof** | | **28,388.10** | **23.99%** |
| Coverage: Dwelling | 100.00% = | 28,388.10 | |
| | | | |
| **Area Subtotal:  Roof** | | **28,388.10** | **23.99%** |
| Coverage: Dwelling | 100.00% = | 28,388.10 | |
| **Exterior** | | **4,025.85** | **3.40%** |
| Coverage: Dwelling | 31.69% = | 1,275.69 | |
| Coverage: Other Structures | 68.31% = | 2,750.16 | |
| **Area: Main Level** | | | |
| **Entry/Foyer** | | **4,726.18** | **3.99%** |
| Coverage: Dwelling | 100.00% = | 4,726.18 | |
| **Living Room** | | **3,385.93** | **2.86%** |
| Coverage: Dwelling | 100.00% = | 3,385.93 | |
| **Kitchen** | | **1,535.48** | **1.30%** |
| Coverage: Dwelling | 100.00% = | 1,535.48 | |
| **Family Room** | | **5,223.34** | **4.41%** |
| Coverage: Dwelling | 100.00% = | 5,223.34 | |
| **Family/Closet** | | **1,437.38** | **1.21%** |
| Coverage: Dwelling | 100.00% = | 1,437.38 | |
| **Laundry Room** | | **2,130.12** | **1.80%** |
| Coverage: Dwelling | 100.00% = | 2,130.12 | |
| **Bedroom 1** | | **2,950.17** | **2.49%** |
| Coverage: Dwelling | 100.00% = | 2,950.17 | |
| **Bedroom 2** | | **3,050.58** | **2.58%** |
| Coverage: Dwelling | 100.00% = | 3,050.58 | |
| **Master Bedroom** | | **3,509.92** | **2.97%** |
| Coverage: Dwelling | 100.00% = | 3,509.92 | |
| **Master Closet** | | **1,571.29** | **1.33%** |

## Advocate Public Adjusting

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

| | | | |
|---|---|---|---|
| Coverage: Dwelling | 100.00% = | 1,571.29 | |
| **Master Bathroom** | | **2,308.40** | **1.95%** |
| Coverage: Dwelling | 100.00% = | 2,308.40 | |
| **Area Subtotal:  Main Level** | | **31,828.79** | **26.89%** |
| Coverage: Dwelling | 100.00% = | 31,828.79 | |
| **General** | | **27,518.53** | **23.25%** |
| Coverage: Dwelling | 95.31% = | 26,229.27 | |
| Coverage: Contents | 4.69% = | 1,289.26 | |
| **Labor Minimums Applied** | | **258.21** | **0.22%** |
| Coverage: Dwelling | 100.00% = | 258.21 | |
| **Subtotal of Areas** | | **118,345.92** | **100.00%** |
| Coverage: Dwelling | 96.59% = | 114,306.50 | |
| Coverage: Other Structures | 2.32% = | 2,750.16 | |
| Coverage: Contents | 1.09% = | 1,289.26 | |
| **Total** | | **118,345.92** | **100.00%** |

**Advocate Public Adjusting**

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

## Recap by Category

| O&P Items | | | | Total | % |
|---|---|---|---|---:|---:|
| **APPLIANCES** | | | | **215.98** | **0.15%** |
| Coverage: Dwelling | @ | 100.00% | = | 215.98 | |
| **AWNINGS & PATIO COVERS** | | | | **15,375.90** | **10.70%** |
| Coverage: Dwelling | @ | 100.00% | = | 15,375.90 | |
| **CABINETRY** | | | | **508.00** | **0.35%** |
| Coverage: Dwelling | @ | 100.00% | = | 508.00 | |
| **CONT: GARMENT & SOFT GOODS CLN** | | | | **892.80** | **0.62%** |
| Coverage: Dwelling | @ | 100.00% | = | 892.80 | |
| **CLEANING** | | | | **4,626.24** | **3.22%** |
| Coverage: Dwelling | @ | 100.00% | = | 4,626.24 | |
| **CONT: PACKING,HANDLNG,STORAGE** | | | | **1,929.58** | **1.34%** |
| Coverage: Dwelling | @ | 33.18% | = | 640.32 | |
| Coverage: Contents | @ | 66.82% | = | 1,289.26 | |
| **GENERAL DEMOLITION** | | | | **8,442.00** | **5.87%** |
| Coverage: Dwelling | @ | 97.65% | = | 8,243.34 | |
| Coverage: Other Structures | @ | 2.35% | = | 198.66 | |
| **DOORS** | | | | **583.48** | **0.41%** |
| Coverage: Dwelling | @ | 100.00% | = | 583.48 | |
| **DRYWALL** | | | | **11,260.93** | **7.84%** |
| Coverage: Dwelling | @ | 100.00% | = | 11,260.93 | |
| **ELECTRICAL** | | | | **15,632.55** | **10.88%** |
| Coverage: Dwelling | @ | 100.00% | = | 15,632.55 | |
| **ELECTRICAL - SPECIAL SYSTEMS** | | | | **119.69** | **0.08%** |
| Coverage: Dwelling | @ | 100.00% | = | 119.69 | |
| **FINISH CARPENTRY / TRIMWORK** | | | | **565.63** | **0.39%** |
| Coverage: Dwelling | @ | 100.00% | = | 565.63 | |
| **FINISH HARDWARE** | | | | **243.98** | **0.17%** |
| Coverage: Dwelling | @ | 100.00% | = | 243.98 | |
| **FRAMING & ROUGH CARPENTRY** | | | | **422.40** | **0.29%** |
| Coverage: Dwelling | @ | 100.00% | = | 422.40 | |
| **HEAT, VENT & AIR CONDITIONING** | | | | **214.01** | **0.15%** |
| Coverage: Dwelling | @ | 100.00% | = | 214.01 | |
| **INSULATION** | | | | **1,183.71** | **0.82%** |
| Coverage: Dwelling | @ | 100.00% | = | 1,183.71 | |
| **LABOR ONLY** | | | | **466.56** | **0.32%** |
| Coverage: Dwelling | @ | 100.00% | = | 466.56 | |
| **LIGHT FIXTURES** | | | | **1,108.02** | **0.77%** |
| Coverage: Dwelling | @ | 100.00% | = | 1,108.02 | |
| **MIRRORS & SHOWER DOORS** | | | | **2,164.93** | **1.51%** |
| Coverage: Dwelling | @ | 100.00% | = | 2,164.93 | |
| **PLUMBING** | | | | **551.69** | **0.38%** |
| Coverage: Dwelling | @ | 100.00% | = | 551.69 | |

### Advocate Public Adjusting

1558 NE 1262nd Street, Unit A
Noth Miami, FL 33162

| O&P Items | | | Total | % |
|---|---|---|---|---|
| **PAINTING** | | | **10,963.43** | **7.63%** |
| Coverage: Dwelling | @ | 100.00% = | 10,963.43 | |
| **ROOFING** | | | **21,206.37** | **14.76%** |
| Coverage: Dwelling | @ | 100.00% = | 21,206.37 | |
| **SCAFFOLDING** | | | **816.41** | **0.57%** |
| Coverage: Dwelling | @ | 100.00% = | 816.41 | |
| **SOFFIT, FASCIA, & GUTTER** | | | **2,651.69** | **1.84%** |
| Coverage: Dwelling | @ | 100.00% = | 2,651.69 | |
| **TEMPORARY REPAIRS** | | | **271.38** | **0.19%** |
| Coverage: Dwelling | @ | 100.00% = | 271.38 | |
| **WINDOWS - ALUMINUM** | | | **7,895.64** | **5.49%** |
| Coverage: Dwelling | @ | 100.00% = | 7,895.64 | |
| **WINDOW TREATMENT** | | | **276.92** | **0.19%** |
| Coverage: Dwelling | @ | 100.00% = | 276.92 | |
| **EXTERIOR STRUCTURES** | | | **2,551.50** | **1.78%** |
| Coverage: Other Structures | @ | 100.00% = | 2,551.50 | |
| **O&P Items Subtotal** | | | **113,141.42** | **78.72%** |

| Non-O&P Items | | | Total | % |
|---|---|---|---|---|
| | | | **5,204.50** | **3.62%** |
| Coverage: Dwelling | @ | 100.00% = | 5,204.50 | |
| **Non-O&P Items Subtotal** | | | **5,204.50** | **3.62%** |
| **O&P Items Subtotal** | | | **113,141.42** | **78.72%** |
| **Material Sales Tax** | | | **2,272.57** | **1.58%** |
| Coverage: Dwelling | @ | 91.80% = | 2,086.12 | |
| Coverage: Other Structures | @ | 5.82% = | 132.33 | |
| Coverage: Contents | @ | 2.38% = | 54.12 | |
| **Overhead** | | | **11,541.68** | **8.03%** |
| Coverage: Dwelling | @ | 96.34% = | 11,119.09 | |
| Coverage: Other Structures | @ | 2.50% = | 288.25 | |
| Coverage: Contents | @ | 1.16% = | 134.34 | |
| **Profit** | | | **11,541.68** | **8.03%** |
| Coverage: Dwelling | @ | 96.34% = | 11,119.09 | |
| Coverage: Other Structures | @ | 2.50% = | 288.25 | |
| Coverage: Contents | @ | 1.16% = | 134.34 | |
| **Laundering Tax** | | | **21.43** | **0.01%** |
| Coverage: Dwelling | @ | 100.00% = | 21.43 | |
| **Total** | | | **143,723.28** | **100.00%** |

IN THE CIRCUIT COURT OF THE 1ST JUDICIAL CIRCUIT, IN AND FOR
SANTA ROSA COUNTY, FLORIDA

GENERAL   JURISDICTION   DIVISION
CASE NO.:

DELMAR SCOTT MEYER,

    *Plaintiff,*

vs.

AMERICAN   SECURITY   INSURANCE
COMPANY,

    *Defendant,*

_____/

## NOTICE OF DESIGNATION OF E-MAIL ADDRESSES

The Insurance Litigation Group, P.A., counsel for the Plaintiff, DELMAR SCOTT

MEYER, pursuant to Florida Rules of Judicial Administration 2.516 (b)(1)(a), designates the

following primary and secondary e-mail addresses for e-mail service in the above-referenced

case:

        Primary:      service@ilgpa.com
        Secondary:  milton@ilgpa.com

## CERTIFICATE OF SERVICE

I CERTIFY that the forgoing document was served with the Complaint.

INSURANCE LITIGATION GROUP, P.A.
*Attorney for Plaintiff*
1500 N.E. 162nd Street
Miami, Florida 33162
Telephone:   (786) 529-0090
Facsimile:   (866) 239-9520
E-Mail: service@ILGPA.COM

By:   /s/ Milton B Grey
       MILTON B GREY, ESQ.
       FL Bar No. 0116560
       LEVI GLICK, ESQ.
       FL Bar No. 1010718

IN THE CIRCUIT COURT OF THE 1ST JUDICIAL CIRCUIT, IN AND FOR
SANTA ROSA COUNTY, FLORIDA

GENERAL   JURISDICTION   DIVISION
CASE NO.:

DELMAR SCOTT MEYER,

     *Plantiff,*

vs.

AMERICAN       SECURITY       INSURANCE
COMPANY,

     *Defendant,*

_____/

### PLANTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT

Plaintiff, DELMAR SCOTT MEYER, by and through their undersigned attorney, and

pursuant to Rule 1.350, Fla. R. Civ. P., requests Defendant, AMERICAN SECURITY

INSURANCE COMPANY, to furnish copies of the following documents to the offices of the

undersigned attorney within forty-five (45) days from the date of service of this request.

### DEFINITIONS AND INSTRUCTIONS

1.     The term "Plaintiff" or "Insured" means named insured, DELMAR SCOTT

MEYER, and his agents, employees, independent contractors, attorneys, and all other persons

acting or purporting to act on his behalf.

2.     The term "You" or "Defendant" means AMERICAN SECURITY INSURANCE

COMPANY, and its agents, employees, independent contractors, subsidiaries, divisions, parent

company, holding company, directors, officers, attorneys, and all other persons acting or

purporting to act on its behalf.

3.     The term "Policy" means the policy, number MLR08678665116, which

Defendant issued to Insured for the property located at 4281 Pace Lane, Pace, FL 32571 that was

in effect on the date of loss alleged in Plaintiff's Complaint filed in this action.

4.     The term "Insured Building" or "Insured Property" means the insured structure and/or its contents located at the address described in Plaintiff's Complaint filed in this action.

5.     The term "Loss" means the event at issue in which the Named Insured suffered property damage, on the date of loss alleged in Plaintiff's Complaint.

6.     The term "Claim" means the Plaintiff's request, made pursuant to Plaintiff's insurance Policy, that Defendant pay Plaintiff the amount of damages that Plaintiff sustained as a result of the Loss.

7.     The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons or other entity.

8.     The term "document" or "documents" means any written, typed, or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, emails, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, interoffice and intraoffice telephone calls, diaries, claim diaries, electronic claim notes, chronological data, minutes, books, reports, studies, summaries, pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or natural records or representations of any kind (including without limitation photographs, photographic negative, microfiche, microfilm, videotape, recordings, motion pictures, phonograph recordings, transcripts or log of such recording, projection), electronic, computer, mechanical, or electric records or representations of any kind (including without limitation tapes, cassettes, discs and records), and binders, cover notes, certificates, analysis, study memoranda, note lists, diaries, logs, questionnaires, bills, purchase orders, shipping orders, memorandum of contract, agreements, licenses, permits, orders, financial data, acknowledgements, computer or data procession cards, computer or data processing discs, and all other data compilations from which information can be obtained or translated, reports and/or summaries of investigations, drafts and revisions of drafts of any documents and original preliminary notes or sketches, no matter how produced or maintained, in your actual or constructive possession, custody or control, whether prepared, published or released by you or by any other person.  If data is stored on computer or electronic media (inter-company email, for example), produce hard copies of each such document."  "Documents" includes all attachments and enclosures.

9.      The term "all documents" means every document or group of documents, as above defined, that are known to you or that can be located or discovered by reasonably diligent efforts.

10.      The term "coverage letter(s)" means the correspondence from You to the Named Insured throughout the claim at issue regarding Your position as to coverage for the Loss.

11.      As used herein, the singular shall include the plural, the plural shall include the singular, and masculine feminine and neuter shall include each of the other genders.

12.      The terms "relating to" or "in any way related to" means in whole or in part constituting, containing, concerning, discussing, commending upon, describing, analyzing, identifying, stating, pertaining to, referring to, or forming the basis of.

13.      The term "Prior Claim" means all claims submitted by or on behalf of an Insured for damage occurring prior to the date of loss alleged in Plaintiff's Complaint, regarding the Insured Building or Insured Property.

14.      The term "Subsequent Claim" means all claims submitted by or on behalf of an Insured for damage occurring after the date of loss alleged in Plaintiff's Complaint, regarding the Insured Building or Insured Property.

15.      The term "Plaintiff's Complaint means the complaint filed by Plaintiff in this action.

16.      This request shall be continuing in nature so as to require the filing of supplemental answers to the extent required under Florida law.

## **REQUESTS**

1.      A certified and complete copy of the Policy that Defendant issued to the Insured that was in effect on or about September 16, 2020.

2.      All documents reflecting Defendant's inspection(s) of the Insured Property after September 16, 2020.

3.      All documents reflecting Defendant's inspection(s) of the Insured Property before September 16, 2020, covering the preceding five (5) years.

4.      All documents reflecting Defendant's inspection(s) of the Insured Property during the Defendant's underwriting of the Insured's Policy.

5.      All documents reflecting Defendant's inspection(s) of the Insured Property during Defendant's underwriting of all insurance policies Defendant issued to the Insured for the Insured Property prior to September 16, 2020.

6.      All photographs and/or videos submitted by Plaintiff to Defendant in any way related to the Loss.

7.      All photographs and/or videos submitted by Defendant to Plaintiff in any way related to the Loss.

8.      All photographs and/or videos taken by Defendant in any way related to the Loss.

9.      All correspondence, emails and all other documents provided by Plaintiff to Defendant in any way related to the Loss.

10.     All correspondence, emails and all other documents provided by Defendant to Plaintiff in any way related to the Loss.

11.     All documents reflecting Defendant's efforts to investigate the Loss.

12.     All documents documenting or supporting Defendant's affirmative defenses, or that Defendant anticipates will support Defendant's reasons for denying or failing to pay the full amount of Plaintiff's Loss.

13.     All documents, including but not limited to estimates, reports, testing, photographs and/or videos created by Defendant, Defendant's adjusters, Defendant's loss consultants, or by any expert retained by Defendant, including but not limited to plumbers, engineers, and/or contractors in any way related to the Loss.

14.     All documents identified in Defendant's Answers to Plaintiff's First Set of Interrogatories.

15.     A current curriculum vitae and all biographical information for all person(s) who inspected the Insured Property for or on behalf of Defendant following the Loss.

16.     All documents in any way related to the damage caused to the Insured Property from the alleged Loss.

17.     All documents related to the Insured Property that support how Defendant determined whether to pay Plaintiff's Claim, and/or how much of Plaintiff's Claim to pay.

18.     All documents reflecting the relationship between Defendant and the adjuster (or any other person or entity) that assisted Defendant in investigating, adjusting, and/or evaluating Plaintiff's Claim.

19.     All documents that support any denials by Defendant of Plaintiff's First Request for Admissions.

20.     All reports relating to the damage to the Insured Property sustained during or as a result of the Loss.

21.     All reports relating to the condition of the Insured Property before the Loss.

22.     All reports relating to the condition of the Insured Property after the Loss.

23.     All documents showing when Plaintiff notified Defendant of the Loss.

24.     All electronic claim notes made by or on behalf of Defendant in any way relating to the Loss, or to the condition of Insured Property at the time of Loss.

25.     The part of Defendant's claim file that Defendant reasonably expects to rely upon at trial in this action.

26.     The part of Defendant's claim file that Defendant reasonably expects to use at trial in support of its affirmative defenses.

27.     All documents that Defendant reasonably expects to rely upon at trial in this action.

28.     All documents that Defendant reasonably expects to use at trial in support of its affirmative defenses.

29.     The part of Defendant's claim file that supports the action taken by Defendant in paying or refusing to pay Plaintiff's Claim.

30.     All documents that support the action taken by Defendant in paying or refusing to pay Plaintiff's Claim.

31.     All estimates prepared by Defendant in any way related to the amount claimed by Plaintiff in this action.

32.     All estimates prepared by Defendant, its agents or independent contractors, contractors, loss consultants, or third parties, that Defendant may use to support its reason for non-payment or partial payment of Plaintiff's Claim.

33.     All documents Defendant provided to the person(s) who investigated, adjusted or otherwise evaluated Plaintiff's Claim.

34.     All documents reflecting any communication between Defendant, and any of Defendant's agents, independent adjusters, plumbers, engineers or any other person or entity retained by Defendant, in any way related to Plaintiff's Claim.

35.     All underwriting documents in any way relating to the condition of the Insured Property before the Loss.

36.     The underwriting file kept by Defendant regarding the Insured Property dating from the inception of Defendant's Policy on the Insured Premises through the present time.

37.     All insurance applications the Insured submitted to Defendant regarding the Insured Property.

38.     All documents containing any facts supporting any of Defendant's affirmative defenses.

39.     All documents containing any facts supporting any of Defendant's reasons for failing to pay and/or paying only part of Plaintiff's Claim.

40.     All documents supporting any allegation or contention by Defendant that Plaintiff's Claim is related to damages involving a prior claim made by Insured or prior damage sustained by an Insured.

41.     All documents supporting any allegation or contention by Defendant that Plaintiff's Claim is related to damages involving a subsequent claim made by Insured or subsequent damage sustained by an Insured.

42.     All documents supporting any allegation or contention by Defendant that the Insured's damages from the Loss are related to damages involving a prior claim made by the Insured or prior damage sustained by an Insured.

43.     All documents supporting any allegation or contention by Defendant that Plaintiff's Claim is related to damages involving a subsequent claim made by the Insured or subsequent damage sustained by an Insured.

44.     All signed sworn proofs of loss submitted by the Insured to Defendant regarding the Loss.

45.     Complete and legible copies of all building permits and all other records obtained from the county or other municipality, applicable to the Insured Property covering a five-year span prior to the Loss.

46.     All documents evidencing all payments made by Defendant to the Insured and/or for the Insured's benefit involving a Prior Claim made by Insured or prior damage sustained by an Insured, involving the Insured Property.

47.     All documents evidencing all payments made by Defendant to the Insured and/or for the Insured's benefit involving a Subsequent Claim made by Insured or subsequent damage sustained by an Insured, involving the Insured Property.

48.     All documents evidencing all payments made by Defendant to the Insured and/or for the Insured's benefit involving the claim for the same date of Loss alleged in the Complaint.

49.     All correspondence and documents between Defendant and any third parties, excluding Defendant's attorney, in any way related to (1) the condition of the Insured Property before the Loss; or (2) the damage to the Insured Property sustained during the Loss.

50.     All reports relating to Plaintiff's Claim or to the damages sustained to Insured Property during or as a result of the Loss.

51.     All documents showing or pertaining to any repairs made to the Insured Property by or on behalf of the Insured prior to the Loss, including but not limited to repair invoices, estimates, canceled checks, credit card receipts, contracts for repair, receipts, certificates of completion, notices of commencement, special assessment notices, payment logs, building permits and building permit applications.

52.     All documents showing or pertaining to any repairs made to the Insured Property by or on behalf of the Insured after the Loss, including but not limited to repair invoices,

estimates, canceled checks, credit card receipts, contracts for repair, receipts, certificates of completion, notices of commencement, special assessment notices, payment logs, building permits and building permit applications.

53.     All transcripts of any Examinations Under Oath given or provided by the Insured regarding the Loss.

54.     All transcripts of any Examinations Under Oath given or provided by anyone besides the Insured regarding the Loss.

55.     All recorded statements given or provided by the Insured regarding the Loss. This request seeks a copy of the recording itself, not Defendant's transcript of the recorded statement.

56.     All recorded statements given or provided by anyone besides the Insured regarding the Loss.  This request seeks a copy of the recording itself, not Defendant's transcript of the recorded statement.

57.     All Coverage Letters sent by Defendant to the Insured in any way related to the Loss.

58.     All transcripts of Examinations Under Oath and/or recordings of all recorded statements given by the Insured regarding any prior or subsequent claims which Defendant may use at trial in this case.


*[The rest of this page is intentionally left blank]*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was served on Defendant with the Complaint.

INSURANCE LITIGATION GROUP, P.A.
*Attorney for Plaintiff*
1500 N.E. 162nd Street
Miami, Florida 33162
Telephone:    (786) 529-0090
Facsimile:    (866) 239-9520
E-Mail: service@ILGPA.COM

By:    /s/ Milton B Grey
        MILTON B GREY, ESQ.
        FL Bar No. 0116560
        LEVI GLICK, ESQ.
        FL Bar No. 1010718

IN THE CIRCUIT COURT OF THE 1ST JUDICIAL CIRCUIT, IN AND FOR
SANTA ROSA COUNTY, FLORIDA

GENERAL           JURISDICTION
DIVISION CASE NO.:

DELMAR SCOTT MEYER,

     *Plaintiff,*

vs.

AMERICAN       SECURITY       INSURANCE
COMPANY,

     *Defendant,*

_____/

## PLAINTIFF'S SET OF INTERROGATORIES TO DEFENDANT

Plaintiff, DELMAR SCOTT MEYER, pursuant to Rule 1.340, Fla. R. Civ. P.,

serves this First Set of Interrogatories upon Defendant to be answered by Defendant

under oath and in writing, within forty-five (45) days from the date of service hereof.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served on Defendant with the

Complaint.

INSURANCE LITIGATION GROUP, P.A.
*Attorney for Plaintiff*
1500 N.E. 162nd Street
Miami, Florida 33162
Telephone:   (786) 529-0090
Facsimile:    (866) 239-9520
E-Mail: service@ILGPA.COM

By:    /s/ Milton B Grey
    MILTON B GREY, ESQ.
    FL Bar No. 0116560
    LEVI GLICK, ESQ.
    FL Bar No. 1010718

## <u>INTERROGATORY DEFINITION AND INSTRUCTIONS</u>

1.      The term "Plaintiff" or "Insured" means DELMAR SCOTT MEYER and his/her/their agents, employees, independent contractors, attorneys, and all other persons acting or purporting to act on his/her/their behalf.

2.      The term "you" or "Defendant" means AMERICAN SECURITY INSURANCE COMPANY, and its agents, employees, independent contractors, subsidiaries, divisions, parent company, holding company, directors, officers, attorneys, and all other persons acting or purporting to act on its behalf.

3.      The term "Policy" means the policy, number MLR08678665116, which Defendant issued to Insured for the property located at 4281 Pace Lane, Pace, FL 32571 that was in effect on the date of loss alleged in Plaintiff's Complaint filed in this action.

4.      The term "Insured Building" or "Insured Property" means the insured structure and/or its contents located at the address alleged in Plaintiff's Complaint filed in this action.

5.      The term "Loss" means the event at issue in which the Insured suffered property damage, on the date of loss alleged in Plaintiff's Complaint.

6.      The term "Claim" means the Plaintiff's request, made pursuant to Plaintiff's insurance Policy, that Defendant pay Plaintiff the amount of damages that Plaintiff sustained as a result of the Loss.

7.      The term "coverage/denial letter" means any letter(s) sent by Defendant to the Insured regarding his/her Claim.

8.      The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons or other entity.

9.      The term "document" or "documents" means any written, typed, or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, emails, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, interoffice and intraoffice telephone calls, diaries, claim diaries, electronic claim notes, chronological data, minutes, books, reports, studies, summaries,

pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or natural records or representations of any kind (including without limitation photographs, photographic negative, microfiche, microfilm, videotape, recordings, motion pictures, phonograph recordings, transcripts or log of such recording, projection), electronic, computer, mechanical, or electric records or representations of any kind (including without limitation tapes, cassettes, discs and records), and binders, cover notes, certificates, analysis, study memoranda, note lists, diaries, logs, questionnaires, bills, purchase orders, shipping orders, memorandum of contract, agreements, licenses, permits, orders, financial data, acknowledgements, computer or data procession cards, computer or data processing discs, and all other data compilations from which information can be obtained or translated, reports and/or summaries of investigations, drafts and revisions of drafts of any documents and original preliminary notes or sketches, no matter how produced or maintained, in your actual or constructive possession, custody or control, whether prepared, published or released by you or by any other person.  If data is stored on computer or electronic media (inter-company email, for example), produce hard copies of each such document." "Documents" includes all attachments and enclosures.

10.     The term "all documents" means every document or group of documents, as above defined, that are known to you or that can be located or discovered by reasonably diligent efforts.

11.     As used herein, the singular shall include the plural, the plural shall include the singular, and masculine feminine and neuter shall include each of the other genders.

12.     The connectives "and" and "or" shall be construed either disjunctive or conjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside their scope.

13.     The terms "coverage letter(s)" means the correspondence from You to the Insured throughout the claim at issue regarding Your position as to coverage for the Loss.

14.     The terms "relating to" or "in any way related to" means in whole or in part constituting, containing, concerning, discussing, commending upon, describing, analyzing, identifying, stating, pertaining to, referring to, or forming the basis of.

15.     "Identify" and "identity" mean:

a.     With respect to a natural person, to state the person's name, title at the time in question, employer and business address at the time in question, and the current or last known employer, business address, and home address;

b.     With respect to an organization or entity, to state the full legal name of the entity and full name by which the organization or entity is commonly known or does business;

c.     With respect to a document, to state the name(s) and title(s) of the author(s) and/or signatory(ies), addressee(s), and recipient(s) of any copies; the subject matter or title; the date of the document; the division, department, or unit of your organization with which the author(s) and/or addressee(s) are or were affiliated; and its present location and custodian; and

d.     With respect to an oral communication to state the names and titles of all persons involved in the communication, and the date and approximate time of the communication.

16.     This request shall be continuing in nature so as to require the filing of supplemental interrogatory answers to the extent required by Florida law.

## INTERROGATORIES

1.     State the name and address of the person(s) answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatories are directed.

2.     Describe any and all policies of insurance which you contend cover or may cover the allegations set forth in Plaintiff's complaint, detailing as to such policies the name of the insurer, the number of the policy, the available limits of liability, and the name and address of the custodian of the policy.

3.     State the date that Defendant first received any notice from Plaintiff and/or the Insured concerning a claim for benefits under the Policy as a result of the Loss.

4.     Identify all persons, believed or known by you, your agents, or attorneys to have any knowledge concerning any of the issues raised in the pleadings, specifying the subject matter about which the witness may have knowledge.

5.     State whether you have obtained any statements (oral, written and/or recorded) from any witness, the dates any such witness statements were taken, by whom any such witness statements were taken, and who has present possession, custody and control of any such statements.

6.      Does the Coverage/Denial letter specifically cite to each and every policy provision and all facts upon which you are relying in connection with your decision to deny, or otherwise not make full payment to Plaintiff for Plaintiff's Claim?  If your answer is anything other than an unqualified affirmative, identify all other Policy provisions and facts upon which you are relying for your denial or partial payment of Plaintiff's Claim.

7.      Do you contend that all or any portion of the Loss is not covered by the Policy(ies) issued by you?  Unless your answer is an unqualified negative, please set forth the specific amounts that you contend are not covered, and for each such amount, all facts, including exclusions or other provisions of the Policy(ies), supporting your contention that no coverage exists.

8.      State each and every Policy provision and all facts related to each upon which you are relying in connection with your decision to deny, or otherwise not make full payment to Plaintiff, on Plaintiff's Claim.

9.      With reference to each of your affirmative defenses raised in this lawsuit, please describe all facts upon which you rely to substantiate such affirmative defense, including identification of all witnesses to each such fact.

10.     With reference to each of your affirmative defenses raised in this lawsuit, please describe all documents and electronically stored information upon which you rely to substantiate such affirmative defense.

11.     Identify all persons involved on your behalf in determining whether to afford coverage for Plaintiff's Claim.  For each person identified, identify the person's employer and explain the role of each person identified in determining whether to pay Plaintiff's Claim.

12.     Identify each document sent from Defendant to the Insured in reference to the Loss involved herein, including the date sent and the name of the individual who sent said communication.

13.     Identify each person, who on behalf of Defendant, inspected the Insured Property, including their field of expertise and date of each inspection.

14.     With regard to any third parties (including all adjusters including your direct employees, independent contractors, and all other persons or entities) who provided services, analysis, adjusting, or otherwise rendered opinions to you in adjusting or handling your determination of whether to pay Plaintiff's Claim, please identify:  (a) the date and nature of the services provided by each third party; (b) all documents you provided to such third party; and (c) all documents such third party provided to you.

15.     Did the Defendant request the Insured to perform any post loss duties for the Claim, including to submit to an Examination Under Oath, to submit a sworn proof of loss, to permit inspection, etc.

16.     If your answer to the preceding interrogatory was yes, please state for each request, the exact request made, the date of the request, whether the request was written or oral, and what did the Insured do in response to said request.

17.     Please state with specificity any conditions subsequent to the Plaintiff's Claim that you contend have not been fulfilled by the Plaintiff, if any exist.

18.     Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit?  If so, state and name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place and substance of each statement.

19.     State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody or control of, any estimate, model, plat, map, drawing, motion picture, videotape, or photograph pertaining to any fact or issue involved in this lawsuit; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

20.     List all amounts that Defendant has paid to the Insured, and/or for the Insured's benefit, regarding the Loss.  State the date each payment was made and what each payment was for.

21.     If an inspection of the Insured Property was performed within the past ten (10) years on the Insured Property, state the nature of the inspection, the name and address of any person who performed the inspection, the date of the inspection, and whether any written reports or communications were prepared in connection with the inspection, and whether any photographs or video was taken.

22.     Identify all insurance claims made by the Insured over the past ten (10) years.   For each claim, identify the date of the claim, the amount of the claim, the insurance carrier, the policy number, the basis of the claim, and how the claim was resolved (e.g., payment, denial, still pending).

23.     Do you contend any person or entity other than you - is or may be, liable in whole or in part for the claims asserted against Defendant in this lawsuit? If so, state the full name and address of each such person or entity, the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not you have notified each such person or entity of your contention

24.     If you claim that you were unable to pay Plaintiff's Claim because you had insufficient information or the notice of Claim did not have sufficient support, state: when you first realized that you had insufficient information, each and every effort made by you to obtain the needed information, when you informed the Plaintiff of the need for further information, and when you gave up trying to obtain the needed information.

25.     If an appraisal of the Insured Property or its contents was performed, state the items that have been appraised, the amount that each such item was appraised for, the name and address of any person who performed or contributed to said appraisal, and the date of said appraisal.

I have read the foregoing Answers to Interrogatories and do swear that they are true and correct to the best of my knowledge and belief.

X _____
(Defendant)

STATE OF _____)

COUNTY OF_____)

SUBSCRIBED and sworn to (or affirmed) before me this _____ day of _____, 20____, by _____, who is [  ] personally known or [  ] produced as identification a _____, and who [  ] did   [did not] take an oath.

Dated this ____ day of _____, 20____.

_____
NOTARY PUBLIC,

State of _____

Commission Expires: